707 P.2d 319

Ed BUCKMASTER, an individual,
Plaintiff/Appellant,

v.

Larry B. DENT, an individual; Dwight W. Davis, an individual; LLC Investments, Inc., a California corporation; Mt. Vista Investments, Inc., a California corporation; Davis-Dent II, a California partnership, Defendants/Appellees.

No. 2 CA–CIV 5384.

Court of Appeals of Arizona,
Division 2, Department A.

Sept. 26, 1985.

Rabkin & Associates by Alan B. Rabkin, Scottsdale, for plaintiff/appellant.

Ryley, Carlock & Applewhite by N. Warner Lee and Abigail Carson Berger, Phoenix and Karp, Stolkin & Weiss, P.C. By Ronald Stolkin and Elaine Hardin, Tucson, for defendants/appellees.

OPINION

FERNANDEZ, Judge.

Appellant Buckmaster filed suit for specific performance of a contract to purchase a mobile home park after a dispute arose as to an easement for ingress and egress,

and escrow failed to close. Appellees Davis and Dent counterclaimed, seeking damages for breach of the purchase contract and, in the alternative, for rescission. The trial court, in ruling on cross summary judgment motions, determined the contract was rescinded and awarded attorney's fees to Davis and Dent. Buckmaster has appealed, contending rescission was not a proper remedy and protesting the attorney fee award. We affirm the rescission and reverse the attorney fee award.

Davis and Dent were the owners of a 281-space mobile home park located off Mission Road in Tucson.[1] In the spring of 1983 Buckmaster offered to purchase the park. Davis and Dent rejected the offer and made a counter-offer which was also rejected. Nothing further occurred between the parties until that fall. Negotiations then resumed and several offers were made by both sides until a contract was entered into October 31, 1983. The contract was for the sale of the mobile home park, approximately ten acres of undeveloped land to the east of the park and a private street between the park and Mission Road known as Via Ingresso (referred to as the "entrance street" in the agreement). The street is the only access to the park. Escrow was opened and was to close in early January 1984. Pursuant to their interpretation of the contract, Davis and Dent submitted proposed warranty deeds to the escrow officer which contained an easement for ingress and egress over Via Ingresso for the benefit of property to the west of the park (referred to as the "front property") which is also owned by Davis and Dent.

The pertinent paragraph of the purchase contract reads as follows:

"4. *Exceptions to Title.* Sellers shall deliver a warranty deed conveying title to the Real Property free of all liens and encumbrances other than an easement for CATV service, an easement for ingress and egress over the Entrance Street, and other exceptions that appear

of record and do not impair the value of the Real Property, and shall deliver a bill of sale conveying title to the Personal Property free and clear of all liens and encumbrances."

Similar language appears in four previous offers submitted during the course of negotiations. Dent, an attorney licensed to practice in California, drafted the language, and Buckmaster utilized it in submitting the two offers he made during the negotiation period. Dent continued to employ the singular of "easement" in his offers after the O'Leary easement was recorded.

The O'Leary easement is an easement for ingress and egress over Via Ingresso which was granted by Davis and Dent to the owners of property to the south of the park on August 1, 1983. It was recorded August 31 after the initial negotiations for sale of the property but before the purchase contract was entered into. Apparently Buckmaster was unaware of the existence of the O'Leary easement until after he entered into the purchase contract.

Buckmaster insists the contract provided for only one easement for ingress and egress which must be the O'Leary easement. Davis and Dent contend they always intended to reserve an easement for access for the benefit of the front property as evidenced by the fact that the language in question first appeared in the May 1983 offer long before the O'Leary easement was granted. They insist the O'Leary easement is provided for in the clause "and other exceptions that appear of record and do not impair the value of the Real Property," and thus two easements were reserved. The trial court found the contract was rescinded because there had been no meeting of the minds on the provision for easement for ingress and egress.

Buckmaster refused to accept the deeds with both easements because the city would not permit him to expand the mobile home park to include the undeveloped land

---

**1.** Shortly after the purchase contract was entered into, LLC Investments, Inc. and Mt. Vista Investments, Inc. became successors in interest to Davis and Dent.

since there was already a maximum amount of traffic using Via Ingresso.

### Propriety of Remedy of Rescission

Appellant contends the trial court should not have ordered the contract rescinded since both parties had urged the court to interpret paragraph 4, thereby finding either that only the O'Leary easement had been contemplated by the parties or that both retained easements had been contemplated. The interpretation of a contract is a question of law for a trial court. *Dutch Inns of America, Inc. v. Horizon Corporation*, 18 Ariz.App. 116, 500 P.2d 901 (1972). In making that interpretation, the court must determine whether the language can be construed in more than one sense, *University Realty & Development Co. v. Omid-Gaf, Inc.*, 19 Ariz.App. 488, 508 P.2d 747 (1973), or if some extrinsic fact exists which creates a latent ambiguity in otherwise clear and intelligible language, *Hamada v. Valley National Bank*, 27 Ariz.App. 433, 555 P.2d 1121 (1976). Buckmaster contends the language of the contract is clear, unambiguous and subject to one interpretation only. The fact that the O'Leary easement was recorded between the negotiation periods cannot be ignored, however, nor can the fact that a period of three months elapsed between those negotiation periods. Those facts resulted in a latent ambiguity as to the meaning intended by the parties for the phrase "an easement for ingress and egress over the Entrance Street."

There is a significant difference between one easement for ingress and egress and two. The parties clearly considered the easement to be a material term of the contract since escrow failed to close solely because of the dispute over that term.

The difference in the parties' intentions does not constitute a mutual mistake of fact but rather a misunderstanding as to the operative effect of the phrase in question. Davis and Dent had no reason to know Buckmaster had not received an updated title report prior to the time negotiations resumed and thus was unaware of the O'Leary easement. Since neither party knew nor had reason to know the meaning intended by the other, there was no "meeting of the minds" as to an essential term of the contract. Restatement (Second) of Contracts § 20 (1979). The situation that existed here is similar to that in *Heywood v. Ziol*, 91 Ariz. 309, 372 P.2d 200 (1962), in which the court noted the facts showed two unilateral mistakes existed since each party was laboring under a different interpretation of the legal effect of the contract provision in dispute.

The Supreme Court in that case stated that "[i]t is elementary that before there can be a binding contract there must be mutual consent of the parties to the terms thereof." 91 Ariz. at 314, 372 P.2d at 203. Without the required meeting of the minds the court affirmed the finding that the contract was void. See also *Mortensen v. Berzell Investment Co.*, 102 Ariz. 348, 429 P.2d 945 (1967). The same applies here.

Having determined that the trial court properly found that the contract was rescinded, we need not address the additional issues raised by Buckmaster.

### Attorney's Fee Award

Buckmaster contends it was improper for the court to award attorney's fees to Davis and Dent because there is no successful party within the meaning of A.R.S. § 12-341.01 when a contract has been held to be void. Although attorney's fees have been awarded to parties who have successfully proved the non-existence of a contractual relationship, we do not believe an award is appropriate under the facts of this case. In *Lacer v. Navajo County*, 141 Ariz. 392, 687 P.2d 400 (App.1984), Navajo County had proved no deed restrictions existed on the use of property Lacer's father had conveyed which Lacer had sued to recover. In *Trebilcox v. Brown & Bain, P.A.*, 133 Ariz. 588, 653 P.2d 45 (App.1982), the defendants proved an attorney-client relationship did not exist in a suit for breach of fiduciary duty. In *Shirley v. Hartford Accident & Indemnity Co.*, 125 Ariz. 70, 607 P.2d 389 (App.1979), the surety proved the supplier

524

of labor to a materialman could not collect for unpaid wages from the general contractor's license bond.

 None of the cases cited by Davis and Dent involved a rescission because of either mutual mistake or two unilateral mistakes. Since Davis drafted the language that resulted in the rescission, we see no basis for awarding them attorney's fees.

The judgment of rescission is affirmed, and the award of attorney's fees is reversed. Both parties are denied attorney's fees on appeal.

BIRDSALL, P.J., and HOWARD, J., concur.