**John F. SKERRY**

v.

**MASSACHUSETTS HIGHER EDUCATION ASSISTANCE CORPORATION d/b/a American Student Assistance; American Student Assistance Guarantor; American Student Assistance Services Corp.**

**Civil No. 98–10162–GAO.**

United States District Court,
D. Massachusetts.

Oct. 5, 1999.

Elizabeth Miller, Grant & Roddy, Boston, MA, for plaintiff.

J. Christopher Sheehan, Boston, MA, for defendant.

O'TOOLE, District Judge.

After review of the relevant papers and consideration of the objections filed by the plaintiff, the court approves and adopts the report and recommendation of the Magistrate Judge. Judgment shall enter for the defendants under Count I. The remaining counts shall be dismissed without prejudice.

### REPORT & RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ALEXANDER, United States Magistrate Judge.

This action is brought by John Skerry, ("Skerry") against the Massachusetts Higher Education Assistance Corporation d/b/a American Student Assistance; American Student Assistance Guarantor; American Student Assistance Corporation ("ASA") for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), the Massachusetts debt collection statute, M.G.L. c. 93, § 24 *et seq.*, the Attorney General's Regulations promulgated thereunder (940 C.M.R. 7.00 *et seq.*); the Banking Commissioner's debt collection regulations (209 C.M.R. 18.00–18.24); M.G.L. c. 93A, and the Attorney General's regulations promulgated thereunder (940 C.M.R. 3.01 *et seq.*). Plaintiff Skerry has filed a Motion for Partial Summary Judgment as to liability, and Defendant ASA has filed a Cross-Motion for Summary Judgment.

Skerry mounts a two pronged argument in support of his motion: (1) ASA is a "debt collector" under the FDCPA and does not fall within either the 15 U.S.C. § 1692a(6)(C) exception for government actors, or the (6)(F)(iii) exception for debt not in default, and is therefore subject to the FDCPA; and (2) ASA's preclaim assistance regarding his allegedly delinquent loan was undertaken in violation of the FDCPA. Defendant ASA avers that (1) it is not a "debt collector" under the FDCPA as it falls within the (6)(F)(iii) exception for debt not in default; and (2) even if its actions could be considered as occurring post-default, it was acting as a fiduciary and therefore falls within the (6)(F)(i) exception for collection activities incidental to a bona fide fiduciary obligation.

For the reasons stated herein, the Defendant's Motion for Summary Judgment is ALLOWED; the Plaintiff's Motion for Partial Summary Judgment is DENIED, and the pendant state law claims are hereby DISMISSED without prejudice.

### I. Undisputed Facts

Plaintiff's loan was originated by State Street Bank, sold to New England Loan

Marketing Association ("Nellie Mae") and serviced by USA Group Services. ASA was the guarantor on Skerry's federal student loan. ASA is a private non-profit student loan guaranty agency, chartered by the Massachusetts legislature. (Wilson Aff. ¶ 5 in Support of Defendant's Motion for Summary Judgment.) ASA has entered into contracts with the United States Department of Education to administer the Federal Family Education Loan Program in Massachusetts.[1]

As a result of a dispute with USA Group Services over his account balance, Skerry stopped making payments on his loan. On January 29, 1997, USA Group Services filed a claim for preclaim assistance with ASA. Consequently, on or about January 30, 1997, ASA sent Skerry its first communication regarding Skerry's student loan debt. At this point the loan was more than 90 days delinquent.

On or about February 26, 1997, Skerry's prior counsel notified ASA of Skerry's dispute with USA Group Services, and claimed that Skerry was not delinquent in his payments. Following this notification, ASA continued its preclaim assistance. Based on the record, ASA sent a total of five routine letters to Skerry (not including its response to Skerry's demand letter) (Pl.Exs. B, E, G, H, & I in Support of Partial Motion for Summary Judgment),

and left three phone messages concerning the account between January 30, 1997, and May 29, 1997.[2] It was eventually determined that Skerry had submitted a $500 check to USA Group Services without his name or account number, resulting in the balance dispute. ASA stopped its preclaim activity while the dispute was resolved. On May 28, 1997, USA Group services notified ASA that preclaim assistance was no longer necessary. Skerry's loan was never defaulted by the guarantor.

## II. Summary Judgment

Pursuant to Fed.R.Civ.P. 56, the summary judgment procedure allows early resolution of litigation when there are no material factual issues in genuine dispute. The initial burden in any summary judgment action resides with the movant to demonstrate an absence of a genuine issue of material fact. *See Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 15 (1st Cir.1986). In meeting this burden, the movant may establish an absence of evidence to support the elements of the plaintiff's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once met, the burden shifts to the non-moving party to establish the existence of "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

---

1. The FFELP was created pursuant to the Higher Education Act of 1965. *See generally* 20 U.S.C. §§ 1070–1099. "The purpose of the HEA is to 'keep the college door open to all students of ability,' regardless of socioeconomic background." *See Pelfrey v. Educational Credit Management Corp.*, 71 F.Supp.2d 1161, 1162 (N.D.Ala. 1999). "Under the HEA, eligible lenders make guaranteed loans on favorable terms to students or parents to help finance student education. The loans are typically guaranteed by guaranty agencies (state or private) and ultimately by the government.... The FFELP is authorized under Title VI, Part B of the HEA.... Participating lending institutions, such as [State Street Bank] use their own funds to make loans to qualified borrowers attending eligible postsecondary schools. The loans are guaranteed by state agencies ... or non-profit organizations, such as [ASA], and are subsi-

dized and reinsured by the United States Department of Education. 20 U.S.C. §§ 1071, 1087–1. The objective of the student loan programs is to make accessible further schooling for students of limited means by encouraging lenders to make funds available to students of limited means throughout the country. Private lenders are encouraged to loan money to students, secondary market participants are encouraged to purchase the loans, and guaranty agencies are created or encouraged to guarantee them." *Id.*

2. ASA's Borrower History Update (Ex. D in Support of Pl. Motion for Partial Summary Judgment) reflects that ASA did attempt to contact Skerry by telephone on three other occasion, but there was no answer. It was on these occasions that ASA opted instead to send three of the aforementioned letters.

The court's responsibility is to determine whether there is evidence on any material point sufficient to support a jury verdict for the party producing it. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A scintilla of evidence will not suffice: "[T]here must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252, 106 S.Ct. 2505. The same burdens exist on cross motions for summary judgment. *See Peters Tp. School Dist. v. Hartford Acc. & Indem.*, 833 F.2d 32, 34 (3d Cir.1987).

### III. Statutory Scheme

██ Skerry alleges that ASA violated the FDCPA, 15 U.S.C. § 1692, *et seq.* This subchapter was enacted in 1977 to eliminate "abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e) (1998). The FDCPA is a strict liability statute, and thus proof of one violation is sufficient to support summary judgment for the Plaintiff on his federal claim. *See Cacace v. Lucas*, 775 F.Supp. 502, 505 (D.Conn.1990). To trigger the protections of the statute, the funds at issue must constitute a debt, and the challenged activity must be conducted by a party that falls within the statutory definition of "debt collector." *See Pelfrey*, 71 F.Supp.2d at 1165–66. Student loans such as the loan at issue here fall under the FDCPA's definition of debt. *See id.* (collecting cases).

The FDCPA defines debt collector as:

[A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 U.S.C. § 1692a(6) (1998).

There are several exceptions exempting parties from the statutory definition of "debt collector," and thus from liability under the statute. *See* 15 U.S.C. § 1692a(6). The instant wrangling revolves around the interpretation of the exception set forth at 15 U.S.C. § 1692a(6)(F)(iii):

[A]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (iii) concerns a debt which was *not in default* at the time it was obtained by such a person [is not a debt collector under this statute]. (Emphasis added).

To determine whether a party who would otherwise be a debt collector falls within the ambit of § 1692a(6)(F)(iii), it is necessary to define the word "default." The FDCPA does not provide a definition of default. FFELP regulations define default as:

The failure of a borrower ... to make an installment payment when due, or to meet other terms of the promissory note ... for ... 180 days for a loan repayable in monthly installments. 34 C.F.R. § 682.200(b)–(b)(1) (1998).

Under the FFELP regulations, "default" is distinct from "delinquent," which is defined as:

[t]he first day after the due date of the first missed payment which is not later made. 34 C.F.R. § 682.411(b).

### IV. Analysis

██ The Court assumes, without deciding, that ASA falls within the general definition of debt collector set forth in 15 U.S.C. § 1692a(6). Because the Court finds that the Defendant falls within the (6)(F)(iii) "debt not in default" exception, we need not reach the question of whether or not the "government actor" exception applies to the Defendant.

ASA, the guarantor, became involved with Skerry's loan at the request of USA Group Services, the loan servicer. After Skerry's loan payment was delinquent for a period of 90 days, USA Group services requested that ASA begin preclaims assistance. FFELP regulations specify that preclaim assistance "involves the initiation by the guaranty agency of at least 3 collection activities, one of which is a letter designed to encourage the borrower to begin or resume repayment," and that the guaranty agency must inform the borrower of all options available to avoid default. 34 C.F.R. § 682.404(a)(2)(ii).

Pursuant to these regulations, ASA contacted Skerry by letter and by telephone regarding the loan. (Pl.Mem. at 4–5.) A default claim was never paid on the loan, and preclaim assistance was recalled on May 28, 1997. (Wilson Aff. ¶ 12 in Support of Def.'s Motion for Summary Judgment.) The parties do not dispute the fact that Skerry submitted a payment without proper identification of his account, that preclaim assistance was initiated by ASA, or that ASA never took assignment of the loan at issue—in other words, the loan was never defaulted by the guarantor.

Skerry urges the Court to ignore the definition of default provided in the FFELP regulations, and in support of his position, floats the following policy-based argument:

"It would be inconsistent with the purposes of the FDCPA to allow such a lengthy period in which the consumer is left with no protection from collection abuse merely because of the uniquely long period of delinquency before a 'default' is declared with this type of loan. While the [FDCPA] uses the word default in § 1692a(6)(F)(iii) of the definitions section, it must be construed as default in its usual sense, as synonymous with delinquency.... The crucial distinction intended by the drafters is between a current debt and one that is past due, not between a delinquent debt and one which has been declared in default." (Pl. Memo at 14–15.) [3]

■ This argument lacks merit for three reasons. First, when Congress passes two statutes arguably referring to the same subject matter, the more specific statute controls. See Pelfrey, 71 F.Supp.2d at 1171 (citing Busic v. United States, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980)). The Pelfrey Court held that the "specific requirements of the FFELP and attendant regulations take preference over any general inconsistencies with the FDCPA," and this Court finds the reasoning of Pelfrey on this point to be persuasive.

Second, to ignore the definition of default as set forth in 34 C.F.R. § 682.200(b)–(b)(1) would result in a contravention of the legislative intent embodied in the FFELP, and would not, in this Court's opinion, further the legislative intent evidenced in the FDCPA. The Defendant argues, and this Court agrees:

3. Plaintiff cites to several informal opinion letters issued by the Federal Trade Commission ("FTC") and FTC official staff commentary to support his position that "the exception to the definition of debt collector for those collecting loans which were not in default at the time they were obtained was intended to protect entities involved in the servicing of loans while they are current ..." (Pl.Memo. at 11.) The FTC opinion letters are not binding upon this Court. See Pressley v. Capital Credit & Collection Serv., Inc., 760 F.2d 922, 925–26 and n. 2 (9th Cir.1985) (citing Staub v. Harris, 626 F.2d 275, 279 (3rd Cir.1980)). Although the Court may consider them, it is in no way is obligated to defer to the interpretations offered in the letters. With regard to FTC Official Staff Commentary, the Practicing Law Institute has stated that, "[t]he Staff Commentary is a guideline intended to clarify the staff's interpretations of the statute, but does not have the force or effect of law ... [s]everal courts have [found] ... portions of the FTC's staff commentary to be unpersuasive and flatly contrary to the statute." Daniel A. Edelman, An Overview of the Fair Debt Collection Practices Act in Consumer Financial Services Litigation 1999, at 199 (PLI Corp. Practice Course Handbook Series No. B0–009X, 1999) (citations omitted). This Court has reviewed the cited letters, and does not find them to be persuasive.

"This case serves as an example of two federal statutory schemes apparently operating at cross purposes. FFELP regulations mandate that the guarantor provide preclaims assistance to prevent default and that they diligently collect defaulted loans. Preclaims involves providing student loan borrowers with counseling and information through a series of letters and calls advising of options to avoid default and encouraging them to resume payment. (Citation omitted.) Due diligence includes a sequence of dunning letters and telephone contacts in which the guarantors must demand that the borrowers pay in full or make satisfactory arrangements. (Citations omitted.) In contrast, the FDCPA requires a debt collector to terminate communications at the borrower's request and provide a validation notice with its initial communication. (Citation omitted.)

If the FDCPA applied here, a guarantor would have to cease preclaims upon borrower request. The likely result would be the payment of a default claim, and neither party would benefit. If the guarantor were required to provide a validation notice with its first preclaim communication, it would likely confuse rather than protect a student loan borrower as the notice does not accurately describe either the nature of the guarantor's interest at the preclaims stage or the authority of the guarantor after a default claim has been paid. . . .

[t]he plaintiff ignores the fact that the FFELP regulatory scheme includes provisions for the protection of student loan borrowers. FFELP regulations require guarantors to provide defaulters with repeated opportunities to understand the terms, nature and amount of their loan obligation, the options for repayment, and the consequences of non-payment. (Citation omitted.) For example, before honoring a claim and declaring a loan in default a lender must request and a guarantor must provide preclaims. (Citations omitted.) Before reporting a default to the credit bureaus the guarantor must wait 60 days for a borrower appeal. (Citation omitted.) In fact, the entire sequence of actions by the guarantor and protections for the borrower are dictated by federal regulations. See generally (Citation omitted.) This regulatory scheme must be followed by all guarantors operating in every state, whether they be a private non-profit or a state agency. Thus, the purpose of the FDCPA, uniform national protection for consumers, is built into the FFELP regulations." (Def.'s Opposition to Pl. Motion at 8–10.)

In other words, the provision of a regulation requiring a 180 day period to pass prior to defaulting a student loan debt is a function of the consumer protections built into the FFELP. It provides time for necessary counseling and creation of alternate payment plans for the debtor, with the ultimate goal of default aversion.

Third, and unsurprisingly, other courts have utilized the definition supplied in the FFELP regulations. *See Brannan v. United Student Aid Funds*, 94 F.3d 1260, 1262 n. 3 (9th Cir.1996) *cert. denied*, 521 U.S. 1106, 117 S.Ct. 2484, 138 L.Ed.2d 992 (1997) and *cert. denied* 521 U.S. 1111, 117 S.Ct. 2496, 138 L.Ed.2d 1003 (1997) (discussing lender's assignee's default of the plaintiff and referencing default procedures set forth in FFELP regulations); *Pelfrey*, 71 F.Supp.2d at 1164 (discussing default and citing FFELP regulations); *Jones v. Intuition, Inc.*, 12 F.Supp. 2d 775, 778 (W.D.Tenn.1998) ("default is defined as the failure to make an installment period [sic] under the loan terms which persists for 180 days. Prior to the default period, the loan is considered delinquent."); *Games v. Cavazos*, 737 F.Supp. 1368, 1391 (D.Del.1990) (defining default by reference to FFELP regulations).

For these reasons, this Court finds that the definition of default that appears in the FFELP regulations should be applied for

purposes of construing 15 U.S.C. § 1692a(6)(F)(iii) when the debt involved is a student loan debt.

Applying this definition, the Court finds that the Defendant does fall within the § 1692a(6)(F)(iii) exception as Skerry's loan was not 180 days past due when ASA undertook to provide preclaims assistance.

This finding is supported by the legislative history of the FDCPA which clearly illustrates Congress's intent that the term debt collector not include parties who obtained an interest in the loan prior to default: "[t]he committee does not intend the definition to cover ... the collection of debts, such as mortgages and *student loans,* by persons who originated such loans; mortgage service companies and others who service outstanding debts for others, *so long as the debts were not in default when taken for servicing.*" S.Rep. No. 95–382, at 3–4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1697–98 (emphasis added). Based on this specific reference to the (6)(F)(iii) exception for those "collecting or attempting to collect" any debts not in default, it is pellucid that Congress did not intend preclaim assistance activities to fall within the category of debt collection.

Skerry relies on *Brannan* for the broad proposition that guaranty agencies are subject to the FDCPA. (Pl.Memo. in Opp. to Def.'s Motion at 2.) *Brannan,* however, merely held that the defendant guaranty agency did not fall within the (6)(C) government actor exception. *See Brannan,* 94 F.3d at 1263. Moreover, the case can be distinguished from the case *sub judice* on its facts as the defendant in *Brannan* conceded that it was a debt collector under the general definition provided in the FDCPA, *see id.* at 1262, and the case concerned collection efforts of the guarantor who had obtained the debt *after* it was in default. *See id.* ("The FDCPA does not provide an exception for guaranty agencies that acquire a student loan *after default* in order to pursue collection"). Skerry's reliance is therefore misplaced.

Several courts and at least one commentator have held that parties servicing non-defaulted loans are not subject to the FDCPA. *See Jones,* 12 F.Supp. 2d at 779 ("[servicer] developed an interest in plaintiff's debt before plaintiff defaulted on that debt. Defendant [servicer], therefore, meets the standard set forth in the 'debt collector' exception of the FDCPA and may not be the subject of a suit under that statute."); *Student Loan Fund of Idaho, Inc. v. Duerner,* 131 Idaho 45, 951 P.2d 1272, 1277 (1997) *cert. denied,* —— U.S. ——, 119 S.Ct. 53, 142 L.Ed.2d 41 (1998) ("by definition, 'debt collector' must include entities seeking to collect a debt which originated with another entity, and which was obtained by the entity now seeking to collect on the debt after the debt was in default."); *Fischer v. UNIPAC Service Corp.,* 519 N.W.2d 793, 799 (Sup. Ct.Iowa 1994) ("By its plain terms, the FDCPA does not apply here because Fischer was not in default at the time [servicer] began servicing his loans."); *Coppola v. Connecticut Student Loan Found.,* Civ. A. N–87–398, 1989 WL 47419, at *2 (D.Conn. March 22, 1989) ("the legislative history of the [FDCPA] indicates that Congress intended that parties who service debts not in default when obtained (such as mortgages and student loans) should be excluded from the Act's coverage.... The parties agree that the debt in this case was not in default when [servicing department of guarantor] began to service the loan for [the secondary market purchaser]. In these circumstances, [servicing department of the guarantor] is excluded from the Act's definition of 'debt collector' by 15 U.S.C. § 1692a(6)(F)(iii)."); Daniel A. Edelman, *An Overview of the Fair Debt Collection Practices Act in* Consumer Financial Services Litigation 1999, at 108 & nn. 53–54 (PLI Corp. Practice Course Handbook Series No. B0–009X, 1999) ("[p]ersons who service debts which are not in default (e.g. services of mortgages and student loans)" are exempt).

One court has gone so far as to draw the broad conclusion that "the sending of these notices [sent by guarantor after it acquired the loan subsequent to the debtor's default] and other private guarantee agencies in connection with their administration of the GSL Program is simply not the kind of activity Congress intended to regulate [under the FDCPA].... I am convinced that Congress did not intend the FDCPA to apply to guarantee agencies administering the GSL Program in cooperation with ED." *Games*, 737 F.Supp. at 1389.

Skerry attempts to turn the tide by arguing that "the issue before this court has never been addressed before, i.e., whether a private guaranty agency, which is not a student loan servicer, but only steps in to render collection assistance to lenders on seriously delinquent loans, is a debt collector under the FDCPA." (Pl. Memo In Opp. to Def.'s Motion at 2.)

There does not appear to be a uniform delegation of service related duties within the student loan industry. In some instances, guaranty agencies perform all administrative functions and in others, the functions are allocated between the loan servicing companies that contract with the guaranty agency and the guaranty agency itself. *Compare Coppola*, 1989 WL 47419 at *1 ("in addition to its primary functions of guaranteeing loans and processing loans that are in default, [Connecticut Student Loan Foundation, the guarantor] also servicest [sic] some student loans that have not defaulted, that is, CSLF contracts with creditors to receive and manage routine student loan payments from loan recipients. Connecticut Assistance for Loan Servicing ('CALS') a department of CSLF, handles these servicing functions.") *with Edler v. Student Loan Marketing Association*, Civ. A. No. 92–1619, 1993 WL 625570, at *1 (servicing company serviced loans, guarantor undertook collection proceedings subsequent to debtor's default, and FDCPA held to be inapplicable to both) and *Jones*, 12 F.Supp. 2d at 776 (guarantor entered into contract with servicer that performed all debt related services, including application processing, preclaims assistance and post claim recoveries).

In *Jones*, the guarantor/FFELP administrator, Tennessee State Assistance Corp. ("TSAC") entered into a contract with a loan servicing company, InTuition, to perform a range of servicing functions. After the debtor's loan payments became delinquent, and prior to default, InTuition began preclaims assistance. InTuition's posture in the case was akin to that of USA Group Services in the instant case. The difference is that in *Jones*, InTuition provided the preclaims assistance, and here, once Skerry stopped making payments on his loan, USA Group Services requested that ASA, the guarantor, initiate preclaims assistance.

The crucial inquiry, for purposes of determining if the (6)(F)(iii) exception applies, is not the general role of the entity within the FFELP framework, e.g., servicer or guarantor, but whether or not the challenged activity concerns a debt which was not in default at the time it was obtained by that entity. A guaranty agency like TCAC in *Jones* may choose to outsource its preclaim assistance responsibilities. Conversely, as here, a guaranty agency may not choose to outsource its preclaims assistance responsibilities and/or the servicer may not opt to provide that service.

There is nothing to indicate that Congress intended the exemption to apply to servicers who conduct preclaim assistance (like InTuition) and guarantors who have an internal department to conduct their own loan servicing including preclaims assistance (like the CALS department of the Connecticut Student Loan Foundation in *Coppola*) but not to guarantors, like ASA, who outsource some loan services and, on this occasion, conducted their own preclaims assistance.

This Court finds that what essentially amounts to an administrative business decision-whether or not a guaranty agency

chooses to outsource its preclaims assistance function—can not reasonably be the criteria on which applicability of the (6)(F)(iii) exemption is predicated. Rather, applicability of the "debt not in default" exemption rests on a determination of whether, on the facts of a given case, the challenged activity of a party concerned debt not yet in default at the time it was obtained by that party.

On the facts of this case and for the foregoing reasons, this Court finds that the Defendant is exempt from the coverage of the FDCPA as it falls within the "debt not in default" exception set forth at 15 U.S.C. § 1692a(6)(F)(iii). The Defendant is not, therefore, a "debt collector" under the FDCPA.

Accordingly, this Court hereby DENIES Plaintiff's Motion for Partial Summary Judgment and ALLOWS Defendant's Motion for Summary Judgment.

 Counts II and III of Skerry's Complaint allege violations of the Massachusetts Consumer Protection statute. Federal courts have minimal discretion to exercise supplemental jurisdiction over state law claims once the federal claims that formed the basis for the original jurisdiction have been dismissed. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). It is the opinion of this Court that the state law claims against ASA would best be resolved in a Massachusetts state court. Those claims are therefore DISMISSED without prejudice.

Aug. 27, 1999.

SO ORDERED.