**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIBEL JUAN DE DIOS,
              *Plaintiff-Appellant,*

v.

INTERNATIONAL REALTY &
INVESTMENTS,
              *Defendant-Appellee.*

No. 08-56288

D.C. No.
2:07-cv-05242-GPS-
RC

OPINION

Appeal from the United States District Court
for the Central District of California
George P. Schiavelli, District Judge, Presiding

Submitted January 11, 2011*
Pasadena, California

Filed April 11, 2011

Before: M. Margaret McKeown, William A. Fletcher, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge McKeown

---

*The panel unanimously concludes that this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

Yevgeniya Lisitsa, Lisitsa Law Corporation, Los Angeles, California, for the plaintiff-appellant.

Peter L. Weinberger, Peter L. Weinberger & Associates, Los Angeles, California, for the defendant-appellee.

**OPINION**

McKEOWN, Circuit Judge:

Congress passed the Fair Debt Collection Practices Act (the "Act") to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The Act broadly applies to any business that uses an instrumentality of interstate commerce to collect a debt on its own or another's behalf. *Id.* § 1692a(6). This appeal centers around one of several narrow exclusions in the Act, which *exempts* as a debt collector any person collecting "a debt which was not *in default* at the time it was obtained by such person." *Id.* § 1692a(6)(F)(iii)

(emphasis added). We conclude that the residential property manager in this case was not a debt collector because it acquired the debt before default, thus exempting the manager from the Act.

## I.  BACKGROUND

In 2001, Maribel Juan De Dios rented an apartment in Los Angeles. After seeking an exemption from the rent stabilization law, in 2006 a new landlord began increasing De Dios's monthly rent to amounts De Dios considered excessive. De Dios initially paid under protest, but then ceased payment of the increased rent.

Meanwhile, between late 2005 and June 2006, the property was in receivership. The court-appointed receiver retained his company, International Realty & Investments, Inc. ("International Realty"), as the agent to manage and collect rents on the property.[1] Once the owner, Norton Community Apartments, L.P., regained control of the property from the receiver, Norton signed a "Property Management Agreement" with International Realty to continue its services as the property manager, beginning July 1, 2007.

In July 2006, various tenants, including De Dios, sued Norton in state court over the rent dispute and other claims. Norton agreed not to file an unlawful detainer action if De Dios (and other tenants) continued to pay the pre-increase rent amount until there was a judicial ruling on the issue (the "Stipulated Forbearance"). Almost a year later, the Stipulated Forbearance ended with De Dios's excessive rent claims being stricken and a negotiated rent increase resolving the other claims.

[1]We take judicial notice, as International Realty requests, of a legible copy of the state court order appointing the receiver.

Following resolution of the state court action, in late July 2007 International Realty sent De Dios a letter stating that the accrued rent from August 2006 to the present was due August 15, 2007 (the "Collection Letter"). Shortly before the due date of her accrued rent increase, De Dios filed suit in federal court, alleging that International Realty violated various disclosure obligations under the Act. Eight other tenants represented by the same attorney also filed nearly identical federal court actions.

After consolidating the nine actions sua sponte, the district court granted International Realty's cross-motion for summary judgment, holding that it was not a debt collector under the Act because the debt was not "in default" at the time International Realty acquired the debt or at the time it sent the Collection Letter.

## II.    ANALYSIS

### A.    SUMMARY JUDGMENT—INTERNATIONAL REALTY WAS NOT A DEBT COLLECTOR

[1] Under the statutory scheme, liability under the Act requires that the defendant be a "debt collector," which is defined as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due . . . another.

15 U.S.C. § 1692a(6).

[2] The statute goes on to provide a series of exemptions. Among those exemptions, for example, the person who originated the debt, such as a creditor to whom the debt was originally owed, is not considered a debt collector. *Id.*

§ 1692a(6)(F)(ii). Significantly, the Act also excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default *at the time it was obtained* by such person." *Id.* § 1692a(6)(F)(iii) (emphasis added).

International Realty claims that as a property manager it does not fall within the primary definition of debt collector and that, in any event, it is not a debt collector because the debt was not "in default" when International Realty acquired it. Rather than deciding whether a debt servicer falls under the primary definition of a debt collector, we follow the simpler path. Crediting the undisputed chronology related to the debt, it becomes clear that International Realty acquired the debt before it was payable. It follows as a matter of logic that a debt not yet payable cannot be in default.

International Realty first entered the picture in February 2006, when the receiver retained it as the property management company. During its tenure under the receiver, International Realty had the responsibility for collecting rents. That responsibility continued when the owner signed a new contract in June 2006. As a consequence of the Stipulated Forbearance, De Dios's rent increase obligation was held in abeyance pending a judicial determination. Until the state court ruled against her in July 2007, De Dios had no obligation to pay the increased rent.

**[3]** The Collection Letter was not sent until July 25, 2007. That letter stated that rent was due from August 1, 2006 and that such rent was payable August 15, 2007. International Realty obtained the right to collect the rent long before any of these dates. Even taking the most conservative date of August 1, 2006—the retroactive due date specified in the collection letter—the company had already been retained to collect rent on behalf of the receiver and then the owner. Indeed, by the terms of the Collection Letter itself, the rent was not

due until August 15, 2007—long after International Realty took up its role as manager and collector of the rent.[2]

**[4]** Although the Act does not define "in default," courts interpreting § 1692a(6)(F)(iii) look to any underlying contracts and applicable law governing the debt at issue. *See, e.g.,* Fed. Trade Comm'n, Advisory Op. n.2 (April 25, 1989) ("Whether a debt is in default is generally controlled by the terms of the contract creating the indebtedness and applicable state law."), *available at* www.ftc.gov/os/statutes/fdcpa/ letters/cranmer.htm; *Berndt v. Fairfield Resorts, Inc.*, 339 F. Supp. 2d 1064, 1068-69 (W.D. Wis. 2004) (examining plaintiff's timeshare purchase contract and defendant's management agreement to determine if overdue association fees were in default); *Skerry v. Mass. Higher Educ. Assistance Corp.*, 73 F. Supp. 2d 47, 52-54 (D. Mass. 1999) (applying federal regulations governing student loans at issue to determine if they were in default).[3] Here, the Stipulated Forbearance held the debt in suspension and the Collection Letter sought payment of amounts due prospectively. Even ignoring International

---

[2]The district court cited the statute accurately, but mistakenly focused on whether the debt was in default when the company attempted to *collect* it, rather than when the company *acquired* the debt. We undertake the correct inquiry, and may affirm on any ground supported by the record. *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003) (per curiam).

[3]The Act's legislative history is consistent with construing "in default" to mean a debt that is at least delinquent, and sometimes more than overdue. *See* S. Rep. No. 95-382 (1977) (debt collector does not include those "mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing"), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698; Fed. Trade Comm'n, Staff Commentary on the Fair Debt Collection Practices Act § 803, 53 Fed. Reg. 50097, 50103 (Dec. 13, 1988) (exemption in § 1692a(6)(F)(iii) was intended to apply to mortgage companies and other parties "whose business is servicing *current* accounts"), *available at* www.ftc.gov/os/statutes/ fdcpa/commentary.shtm#802 (emphasis added); *accord FTC v. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007); *Schlosser v. Fairbanks Cap. Corp.*, 323 F.3d 534, 538 (7th Cir. 2003).

Realty's role during the receivership, by June 2006 it had authority to collect the rent which was not yet in default.

The Seventh Circuit addressed the forbearance scenario in *Bailey v. Security National Servicing Corporation*, 154 F.3d 384 (7th Cir. 1998). After plaintiffs defaulted on their mortgage, they signed a forbearance agreement with the U.S. Department of Housing and Urban Development ("HUD"), agreeing to make a series of payments over time to bring their mortgage current. *Id.* at 386. HUD later sold the plaintiffs' loan to a private lender. *Id.* The lender sent plaintiffs a letter advising them of the final four payments due on the loan and stating that they could be in default if the payments were not made. *Id.* Like International Realty, the lender argued that it was not subject to the Act because the letter was a warning sent prior to the debt being due. *Id.* at 387. Agreeing, the court noted that although the plaintiffs were in default under the mortgage, like De Dios, they were not in default under the forbearance agreement. *Id.* 387-88. The court explained:

> The important letter . . . does not "demand" any payments whatsoever, but merely informs the Baileys about "the current status" of their account. *The due dates listed in the letter are all prospective.* Surely this is not the type of dunning letter that describes a communication related to "the collection" of a debt.

*Id.* at 388-89 (emphasis added).

[5] In another strikingly similar case, the district court in *Franceschi v. Mautner-Glick Corporation* considered the effect of a settlement agreement on a tenant's rental obligation. 22 F. Supp. 2d 250, 253 (S.D.N.Y. 1998). Like the state court determination here, a settlement agreement resolved the amount of overdue rent. *Id.* at 251. Because the property management agent obtained the right to collect rents on the landlord's behalf before the rent became due under the settlement agreement, the agent was not collecting a debt in default when

it sent a demand letter for the remaining, disputed portion of overdue rent. *See id.* at 253. The same analysis precludes De Dios's claim under the Act.

De Dios's remaining arguments are unpersuasive. The Property Management Agreement between International Realty and the owner was not, as De Dios claims, invalid. The receivership order restricted the receiver from contracting with a party to the lawsuit. International Realty was not, however, a party to the suit, and, in any event, any such restriction ended when the receivership was effectively terminated. Nor had the Property Management Agreement expired when International Realty sent the Collection Letter. Rather, once International Realty ceased being the owner's exclusive agent after July 2007 (when the Collection Letter was sent), the contract continued on a non-exclusive basis until terminated by either party. Finally, there is no support for De Dios's argument that the rent increases were not legitimately owed because of calculation errors.

**[6]** In sum, International Realty is exempt from the definition of a "debt collector" under § 1692a(6)(F)(iii) because it obtained the right to collect De Dios's rent before the debt was contractually overdue and before it triggered applicable contractual conditions or state law governing default.

### B.   SANCTIONS AGAINST DE DIOS'S COUNSEL AND ATTORNEYS' FEES AWARD FOR VEXATIOUS MOTION

Two additional rulings by the district court are at issue in this appeal—sanctions against De Dios's counsel for filing multiple identical actions, and an attorneys' fees award to defendant for opposing De Dios's disqualification motion. We review the district court's imposition of sanctions and award of attorneys' fees for abuse of discretion, *see P.N. v. Seattle Sch. Dist. No. 1*, 474 F.3d 1165, 1168 (9th Cir. 2007) (attorneys' fees award); *Holgate v. Baldwin*, 425 F.3d 671, 675 (9th Cir. 2005) (Rule 11 sanctions), and we affirm.

**[7]** The district court did not abuse its discretion in sanctioning De Dios's counsel $500 for "vexatious litigation strategy" in filing nine separate but identical actions for alleged violations of the Act instead of a single action naming all nine tenants as plaintiffs. In its order to show cause on sanctions, the district court wrote:

> [T]here appears to be no legitimate reason for the filing of nine individual actions rather than a single action naming nine Plaintiffs. By filing the case as they did, Plaintiffs' counsel unnecessarily multiplied the costs of litigation and the burden on the Court.

We agree. To begin, counsel failed to file a notice of related case in violation of the local rules. As referenced in the court's detailed findings, counsel attempted to justify her actions by professing that conflicts in the clients' respective settlement positions prevented her from filing one suit. This argument is singularly unpersuasive. The district court pointedly noted that "merely filing separate lawsuits does not alleviate the ethical issues related to collective representation." The district court also documented its concern that some of the clients undertook the litigation to punish International Realty rather than to resolve claims under the Act.

Although De Dios is correct that sanctions under 28 U.S.C. § 1927 do not apply to complaints or initial pleadings, *see Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.)*, 78 F.3d 431, 435 (9th Cir. 1996), the district court had ample grounds on this record to impose the sanctions under Rule 11 and its inherent authority to curb abusive litigation practices. *See* Fed. R. Civ. P. 11(b)(1) (allowing sanctions for filings that "harass, cause unnecessary delay, or needlessly increase the cost of litigation"); *Gomez v. Vernon*, 255 F.3d 1118, 1133-34 (9th Cir. 2001) (imposing inherent power sanctions for counsel's abusive tactics that resulted in unnecessary litigation).

**[8]** The district court's additional sanctions award under 28 U.S.C. § 1927—$12,000 in attorneys' fees to counsel for International Realty—arose from De Dios's motion to disqualify defense counsel because of an alleged conflict of interest in representing his client. According to De Dios, the conflict purportedly arose in earlier litigation because defense counsel, then representing Norton, the property owner, suggested that either International Realty or the receiver, not Norton, was the proper party defendant. The district court quickly dispatched this claim, finding that by virtue of a conflict waiver and an indemnity agreement there was no actual conflict. The district court further found that the motion was procedurally defective—De Dios filed it without complying with local meet and confer rules, *see* C.D. Cal. Local Rule 7-3— and finally that De Dios lacked standing to seek disqualification for defense counsel's alleged breach of duties to *his* client, *see Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998). It is not surprising that De Dios's counsel does not challenge the court's rulings, as its findings are well grounded and legally correct. Instead, De Dios pleads that the motion was not so vexatious as to warrant sanctions and that she was unaware of the indemnification agreement. Given that there was no legal basis for the motion, these after-the-fact justifications do not save the day. The district court did not abuse its discretion in awarding sanctions under 28 U.S.C. § 1927.

**AFFIRMED**.