**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

NOV 21 2016

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JUDITH M. RICH and VINCENT P. VITALE,<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>BANK OF AMERICA, N.A., a national bank, individually and as successor in interest to BAC Home Loans Servicing, LP and Countrywide Bank, F.S. B. and BRYAN CAVE LLP, a Missouri Limited Liability Partnership,<br><br>Defendants-Appellees. | No.   14-17190<br>        15-15885<br><br>D.C. No. 2:11-cv-00511-DLR<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Submitted November 17, 2016**
San Francisco, California

Before: THOMAS, Chief Judge, and GILMAN*** and FRIEDLAND, Circuit Judges.

---

\*       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.
\*\*       The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).
\*\*\*       The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Judith Rich and Vincent Vitale sued Bank of America, N.A. ("BANA") and its counsel Bryan Cave, LLP for allegedly misleading them regarding whether a loan modification would include a "balloon payment."

Their complaint alleged violations of the Arizona Consumer Fraud Act and the Fair Debt Collection Practices Act, fraud, breach of contract, promissory estoppel, and negligence. They also alleged that BANA had waived its attorney-client privilege regarding certain documents and that Bryan Cave should be disqualified from representing BANA. The district court dismissed some of Plaintiffs' claims and granted summary judgment to BANA and Bryan Cave on the rest, and it awarded attorneys' fees to BANA. Rich and Vitale appeal from the dismissal, from the grant of summary judgment, and from the award of attorneys' fees. We affirm.

## I.

The Arizona Consumer Fraud Act ("ACFA"), A.R.S. § 44-1522, prohibits deception, fraud, misrepresentation, or concealment of a material fact "in connection with the sale or advertisement of any merchandise." The elements of an ACFA violation are "a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83, 87 (Ariz.

Ct. App. 1983).

As an initial matter, we observe that the heart of the parties' dispute was likely due to a misunderstanding rather than a false promise or misrepresentation. The district court noted that what Plaintiffs call a "balloon payment" BANA refers to as a "deferred principal balance," the difference being that the deferred principal balance did not accrue monthly interest. BANA thus contends that its answer that the loan modification did not include a balloon payment was true because Plaintiffs never asked about a deferred principal balance. The district court nevertheless concluded that "it was not wholly unreasonable for Plaintiffs to interpret these terms synonymously."

Even assuming that a false promise or misrepresentation occurred, the district court correctly concluded that Plaintiffs have not demonstrated "consequent and proximate injury" and therefore cannot satisfy that element of an ACFA claim. *Dunlap*, 666 P.2d at 87. In reliance on BANA's statement that the loan modification offer would not contain a balloon payment, Rich and Vitale made three payments pursuant to the Trial Period Plan ("TPP"). But they already owed this money—indeed, the payments were less than the payments they would have

3

owed in those months absent the TPP arrangement. Moreover, BANA has attempted to return these payments.[1]

Plaintiffs also argue that their injury arises from BANA's refusal to provide them with a loan modification that does not include a balloon payment. But, on Plaintiffs' theory, had there been no fraud, i.e., had they been told the modification would include a balloon payment, Plaintiffs would not have made the three TPP payments—and thus there would have been no modification offer at all. In this alternative universe, Plaintiffs would presumably still have their original loan (in default), not a loan modification sans balloon payment. *See Arrington v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 651 F.2d 615, 621 (9th Cir. 1981) (explaining that a plaintiff who was fraudulently induced to buy stock was not entitled to dividends paid on the stock because "[h]ad there been no fraud, plaintiffs would not have owned the stocks"). Because Plaintiffs were never entitled to a loan modification without a balloon payment, their failure to receive one thus cannot constitute the type of "actual and consequent injury" the ACFA requires.

Finally, Bryan Cave merely acted as a conduit in transmitting information between Plaintiffs and BANA; it had "no financial interest in the actual sale of

---

[1] We reject Plaintiffs' argument that *Shaw v. BAC Home Loans Servicing, LP*, No. 10-CV-2041, 2011 WL 805938 (S.D. Cal. Feb. 28, 2011), has issue-preclusive effect here. The facts and governing law in *Shaw* caused the issues decided there to be different from those presented here.

4

merchandise." *Powers v. Guaranty RV, Inc.*, 278 P.3d 333, 339 (Ariz. Ct. App. 2012). Accordingly, there is no evidence that Bryan Cave attempted to sell Plaintiffs anything, as required for coverage under the ACFA.

II.

The Fair Debt Collection Practices Act ("FDCPA") regulates the conduct of debt collectors with the goal of "eliminat[ing] abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The FDCPA excludes from the definition of "debt collector," and therefore does not apply to, "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii); *see also De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1074 (9th Cir. 2011) (holding that the FDCPA did not apply to a property manager responsible for collecting rent on behalf of the owner when the property manager had this responsibility before the debt was payable).

Despite Plaintiffs' arguments to the contrary, the evidence shows that BANA or its subsidiaries have serviced the loan at issue since 2006, well before Plaintiffs' default in October 2010. Plaintiffs suggest that various documents identify entities other than BANA as the beneficiary or servicer of the loan. But they offer no admissible evidence to counter BANA's evidence that, while mergers

5

and acquisitions may have resulted in the servicer's name changing, no transfer of servicing rights has occurred.

Because the admissible evidence shows that BANA has serviced the loan since before Rich and Vitale's default, the FDCPA does not apply to BANA pursuant to 15 U.S.C. § 1692a(6)(F)(iii). *See De Dios*, 641 F.3d at 1074.

III.

In Arizona, a plaintiff must prove the following nine elements to succeed on a fraud claim:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the information should be acted upon by the hearer and in a manner reasonably contemplated, (6) the hearer's ignorance of the information's falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury.

*Green v. Lisa Frank, Inc.*, 211 P.3d 16, 34 (Ariz. Ct. App. 2009) (quoting *Taeger v. Catholic Family & Cmty. Servs.*, 995 P.2d 721, 730 (Ariz. Ct. App. 1999)). In addition, plaintiffs can recover only pecuniary damages. *Med. Lab. Mgmt. Consultants v. Am. Broad. Co.*, 30 F. Supp. 2d 1182, 1200 (D. Ariz. 1998).

Even assuming that the other elements could be satisfied, Plaintiffs' fraud claim fails because, as explained above, they have not shown a "consequent and proximate injury." There is no evidence that Plaintiffs have suffered pecuniary damages—other than the three TPP payments, money that they already owed and

6

that BANA has offered to return—by relying on BANA's allegedly false statements.

## IV.

Arizona law follows the basic contract principle that "before there can be a binding contract there must be mutual consent of the parties to the terms thereof." *Heywood v. Ziol*, 372 P.2d 200, 203 (Ariz. 1962) (citing *Spellman Lumber Co. v. Hall Lumber Co.*, 241 P.2d 196 (Ariz. 1952)). This mutual consent exists when the parties share a common understanding of the terms of the contract. *See id.* By contrast, when the parties have different understandings and "neither party kn[ows] nor ha[s] reason to know the meaning intended by the other, there [i]s no 'meeting of the minds' as to an essential term of the contract." *Buckmaster v. Dent*, 707 P.2d 319, 321 (Ariz. Ct. App. 1985) (citing Restatement (Second) of Contracts § 20 (1979)). And "[w]ithout the required meeting of the minds . . . [a] contract [i]s void." *Id.* (citing *Heywood*, 372 P.2d at 203).

Here, as the district court explained, "[t]he dispute over the [unpaid principal balance] and the deferred principal balance (or, as Plaintiffs call it, the balloon payment) appears to result from the parties applying different definitions to certain terms." Because there was no "meeting of the minds" as to these centrally important terms, no binding contract promising debt forgiveness formed. The

7

district court therefore did not err in dismissing Plaintiffs' contract claim against BANA.

V.

To prevail on a claim of promissory estoppel, a plaintiff must prove that the defendant made a promise, that it was reasonably foreseeable that the plaintiff would rely on that promise, and that the plaintiff did rely on that promise to his detriment. *See Diaz-Amador v. Wells Fargo Home Mortgs.*, 856 F. Supp. 2d 1074, 1079 (D. Ariz. 2012). The reliance must result in a "substantial and material change of position." *Weiner v. Romley*, 381 P.2d 581, 584 (Ariz. 1963).

Assuming that BANA promised Rich and Vitale a specific loan modification offer, and assuming that it was reasonably foreseeable that Rich and Vitale would rely on that promise, Plaintiffs' promissory estoppel claim fails because they have not shown that they relied on that promise *to their detriment*.[2] In reliance on BANA's statements, Plaintiffs made three trial payments, which were less than the normal monthly payments that they already owed.

Plaintiffs argue that by making the payments, they gave up the possibility of an efficient breach. But Plaintiffs had already breached by defaulting on the loan

---

[2] Plaintiffs also assert a claim for promissory estoppel based on statements that BANA allegedly made regarding Plaintiffs' eligibility for a loan modification program. Even if BANA made these statements, there is no evidence that BANA promised Plaintiffs anything. Without a promise by the defendant, the promissory estoppel claim must fail.

before they made the payments, and they remained in breach after they made the payments. To the extent Plaintiffs are arguing that they could have remained in breach *and* not paid the three TPP payments, promissory estoppel is not available because enforcement of the alleged promise would not be the only way to remedy Plaintiffs' injury. *See Double AA Builders, Ltd. v. Grand State Constr. LLC*, 114 P.3d 835, 838 (Ariz. Ct. App. 2005). Here, Plaintiffs' alleged injury could be remedied if BANA returned the three TPP payments to Plaintiffs—something BANA has already offered to do.

Finally, although Plaintiffs argue that they lost the opportunity to apply for alternative financing, they identify no program that they would have qualified for.

Because there is no evidence that Plaintiffs relied on BANA's alleged promises to their detriment, the district court did not err in granting summary judgment to BANA on Plaintiffs' promissory estoppel claim.

VI.

In Arizona, negligence has four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007) (citing *Ontiveros v. Borak*, 667 P.2d 200, 204 (Ariz. 1983)).

9

Because, as discussed above, Plaintiffs have failed to demonstrate that they suffered actual damages as a result of BANA's statements about the loan modification offer, the district court did not err in granting summary judgment on this claim.

VII.

Under Arizona law, implied waiver of the attorney-client privilege occurs when the following conditions are satisfied:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit [or raising an affirmative defense], by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*State Farm Mut. Auto. Ins. Co. v. Lee*, 13 P.3d 1169, 1173 (Ariz. 2000) (alteration in original) (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)). "[T]he mere fact that privileged communications would be relevant to the issues before the court is of no consequence to the issue of waiver." *Accomazzo v. Kemp, ex rel. Cty. of Maricopa*, 319 P.3d 231, 234 (Ariz. Ct. App. 2014).

Contrary to Plaintiffs' assertions otherwise, BANA did not commit an affirmative act that put the protected information in its communications with Bryan Cave at issue. Although BANA discussed the existence of these communications, it did not use their contents as a basis for any claims or defenses. The district court thus did not abuse its discretion in denying Plaintiffs' motion seeking a

10

determination that BANA waived its attorney-client privilege for the communications between BANA and Bryan Cave.

The district court likewise did not abuse its discretion in denying the motion regarding BANA's electronic notes. Plaintiffs' motion for reconsideration of BANA's waiver of attorney-client privilege raised this issue for the first time. The district court did not address this claim. "[A]buse of discretion review precludes reversing the district court for declining to address an issue raised for the first time in a motion for reconsideration." *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

## VIII.

According to Plaintiffs, Bryan Cave should be disqualified because it is a co-defendant with BANA and represents clients with conflicting interests. The district court concluded that Plaintiffs lacked standing to bring such a motion. We agree. *See Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998).

Plaintiffs argue that they have suffered an injury because "[i]f BANA is not required to pay Bryan Cave, then Homeowners are not required to pay BANA." Even if true, this injury—the payment of attorneys' fees—is not caused by the alleged conflict of interest. Plaintiffs' alleged injury thus lacks the causal connection required for a plaintiff to have standing to bring a disqualification motion.

11

Plaintiffs further assert that Vitale has standing "because he is an attorney in good standing." That Vitale may have a duty to report ethical violations by other attorneys does not establish that he has suffered an injury sufficient to establish standing to force disqualification.

IX.

The district court held that BANA was entitled to attorneys' fees under both Arizona law and the Note and Deed of Trust. The Note states, "[T]he Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note . . . . Those expenses include, for example reasonable attorneys' fees." The Deed of Trust similarly provides that the lender can recover reasonable attorneys' fees for defending its interest in Plaintiffs' home. Under Arizona law, "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney[s'] fees." A.R.S. § 12-341.01(A).

In Arizona, "when a contract has an attorney[s'] fees provision it controls to the exclusion of the statute." *Lisa v. Strom*, 904 P.2d 1239, 1242 n.2 (Ariz. Ct. App. 1995). Plaintiffs are therefore correct that courts cannot award fees under A.R.S. § 12-341.01(A) if the parties provided for attorneys' fees in their contract. Because the district court held that BANA was entitled to attorneys' fees either

12

under the Note and Deed of Trust or under A.R.S. § 12-341.01(A), though, we affirm the award under the Note and Deed of Trust.[3]

X.

For the foregoing reasons, we AFFIRM.

---

[3] Plaintiffs also argue that the district court erred in considering settlement discussions when deciding whether to award attorneys' fees. But a court may consider settlement discussions in determining an award of attorneys' fees. *See Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011).