McMURDIE, Judge:
*1034 ¶1 Billy William Buckholtz ("Husband") appeals the decree dissolving his marriage to Mirta Elizabeth Buckholtz ("Wife"). We hold when a marital separation agreement is presented to the superior court under Arizona Revised Statutes ("A.R.S.") section 25-317, the superior court must determine whether the agreement is enforceable, and if the agreement is enforceable, determine whether it is "unfair." We also hold that parties to a separation agreement may consider their sole and separate property when creating an agreement, and if they do so, the superior court also may consider the parties' sole and separate property in determining whether the agreement is unfair under A.R.S. § 25-317. We emphasize, however, that this is so only if they have acted with full knowledge of the nature of the property involved, including knowing whether the property at issue is a community or separate asset. For the following reasons, we reverse and remand the decree in this case for proceedings consistent with this opinion.
FACTS AND PROCEDURAL BACKGROUND
¶2 Husband and Wife were married in 1978. On June 3, 2013, after individually consulting with attorneys, they signed a Marriage Separation Agreement (the "Agreement") to divide their property and debts. The Agreement stated Husband "will remain" in their marital residence and the parties "agreed upon a division of all assets, owned or possessed by them as marital property or separate property ... [and] are in possession of all of those assets to which he or she is respectively entitled." The parties also agreed that any "debt accumulated as of the date of this Agreement is the debt of the individual party, regardless if the debt was incurred as a result of joint credit." The Agreement did not specifically reference any other assets or debts.
¶3 The parties have raised arguments regarding two significant assets. The first asset is the parties' home. Approximately one month before signing the Agreement, the house was appraised at $257,500. Around the time the Agreement was signed, Wife quit-claimed all right, title, or interest in the house to Husband. Husband refinanced the house, and the same day the parties signed the Agreement, Husband transferred $127,435 to Wife, approximately one-half of the house's equity.
¶4 The other significant asset is Wife's 401(k) account. After the parties married, Wife began working for an airline and in April 2013, her 401(k) was valued at $152,122. On June 3, 2013, in a separate document, Husband quit-claimed all right, title, or interest in Wife's 401(k) to Wife "as her sole and separate property." It is unclear why the parties used a "quit-claim deed" to transfer Husband's interest in Wife's 401(k), but Husband testified he knew that by signing the document he was giving up his rights to Wife's 401(k).
¶5 The Agreement, however, did not reference Wife's 401(k) account or the equity in the community home. The Agreement also did not reference a monthly benefit payment Husband receives from the military related to his service before the parties married. The parties and the superior court referred to Husband's military benefit as both a disability payment and a pension. Regardless of the type of military benefit, both parties agree on appeal the benefit is Husband's sole and separate property.
¶6 More than three years after Husband and Wife signed the Agreement and the "quit claim deeds," Husband petitioned for dissolution of the marriage. Neither party sought spousal maintenance and they do not have any minor children; therefore, the only issue before the court was division of the parties' assets and debts. In his petition, Husband admitted that the parties entered into the Agreement, but alleged that provisions of the Agreement were not fair and equitable. At an evidentiary hearing, Husband argued the Agreement unfairly and inequitably divided the parties' home and Wife's 401(k) because Wife received approximately half the equity in the house and all of her 401(k) account. Husband claimed he was entitled to fifty percent of the value of Wife's 401(k) as of the date the parties signed the Agreement, plus *1035 any increase in value he would have obtained from his share between that date and the termination of the community estate.
¶7 Following the evidentiary hearing, the superior court entered a decree of dissolution. The court found the parties freely, knowingly, and voluntarily entered into the Agreement, and that the Agreement was valid and binding and fairly and equitably divided the community property and debts as of June 3, 2013. The court then incorporated the Agreement into the decree. The court affirmed the house as Husband's separate property pursuant to the Agreement; affirmed the payment of $127,435 to Wife as her share of the community interest in the house; and awarded Wife her 401(k), with Husband having no claim to the account. The court confirmed Husband's "military pension" was his sole and separate property, with Wife having no claim to the benefit. The court also distributed the parties' community debts and other community assets, including household furnishings, cars, life insurance policies, and bank accounts.
¶8 Pursuant to Arizona Rules of Family Law Procedure 82 and 83,[1] Husband moved to correct the findings of fact, for an amended judgment, and for a new trial. The court denied the motions. Husband timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).
DISCUSSION
A. When a Marital Separation Agreement is Presented to the Court, the Court Must First Determine Whether the Agreement is Enforceable.
¶9 "To promote amicable settlement of disputes between parties to a marriage attendant on their separation or the dissolution of their marriage, the parties may enter into a written separation agreement containing provisions for disposition of any property owned by either of them." A.R.S. § 25-317(A). In a dissolution proceeding, the terms of a separation agreement "except those providing for the support, custody and parenting time of children, are binding on the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unfair ." A.R.S. § 25-317(B) (emphasis added).
¶10 A marital separation agreement is a contract, see Muchesko v. Muchesko , 191 Ariz. 265, 268, 955 P.2d 21, 24 (App. 1997), and when a property settlement agreement is incorporated into a decree, contract law governs the agreement, MacMillan v. Schwartz , 226 Ariz. 584, 588, ¶ 12, 250 P.3d 1213, 1217 (App. 2011). For an enforceable contract to exist, there must be "an offer, acceptance, consideration, a sufficiently specific statement of the parties' obligations, and mutual assent." Muchesko , 191 Ariz. at 268, 955 P.2d at 24 (citing Savoca Masonry Co. v. Homes & Son Constr. Co. , 112 Ariz. 392, 394, 542 P.2d 817, 819 (1975) ). The validity and enforceability of a contract is a mixed question of law and fact, which we review de novo . Armiros v. Rohr , 243 Ariz. 600, 605, ¶ 16, 416 P.3d 864, 869 (App. 2018).
¶11 "[B]efore a binding contract is formed, the parties must mutually consent to all material terms. A distinct intent common to both parties must exist without doubt or difference, and until all understand alike there can be no assent." Hill-Shafer P'ship v. Chilson Family Tr. , 165 Ariz. 469, 473, 799 P.2d 810, 814 (1990). Mutual assent is based on objective evidence, not on the hidden intent of the parties, and objective evidence includes both written and spoken words, as well as acts. Johnson v. Earnhardt's Gilbert Dodge, Inc. , 212 Ariz. 381, 384, ¶ 11, 132 P.3d 825, 828 (2006). A misunderstanding "must be reasonable before a court may properly find a lack of mutual assent." Hartford v. Indus. Comm'n , 178 Ariz. 106, 112, 870 P.2d 1202, 1208 (App. 1994). "Relief is proper if the writing evidencing the purported agreement is uncertain or ambiguous." Hill-Shafer , 165 Ariz. at 474, 799 P.2d at 815. But, "some extrinsic facts could create 'a latent ambiguity in otherwise clear and intelligible *1036 language.' " Id. (quoting Buckmaster v. Dent , 146 Ariz. 521, 523, 707 P.2d 319, 321 (App. 1985) ).
¶12 In this case, the superior court found the Agreement was valid and binding. Finding Wife's testimony about discussions between the parties to be credible, the court also found that "when the parties entered into the [Agreement], they had full knowledge of the community property in their respective possession. In addition, the totality of the evidence showed that the parties held deliberative discussions about the distribution of the community property." We agree that the evidence presented shows the parties had a binding agreement regarding the disposition of some assets listed in the decree, including their vehicles, life insurance policies, and bank accounts. However, the record does not support a conclusion that the parties had a binding agreement concerning Husband's payment of the home equity to Wife.
¶13 Based on the evidence in the record, we cannot say Husband and Wife shared a common understanding regarding Husband's home equity payment to Wife such that there was mutual assent. See Hill-Shafer , 165 Ariz. at 473, 799 P.2d at 814. Husband and Wife both testified it was their understanding Husband would "keep" the house and that Wife would keep her 401(k). And yet, Wife also received $127,435-approximately one-half of the house's equity. Husband testified he paid Wife one-half of the house's equity, not because that was what the parties agreed to, but because a mortgage advisor told him to do so for liability purposes. Wife, meanwhile, testified that she was not involved in Husband's refinancing of the house; when she was preparing the Agreement she was unaware of Husband's actions related to the house; and it was Husband's choice to pay her a share of the house's equity.
¶14 Consistent with Wife's testimony, she argues on appeal that Husband "gifted" her the equity in the house.[2] Wife maintains that Husband's intent to gift her a portion of the equity in the home was outside the scope of the Agreement. Such an argument is inconsistent with the requirement that the parties had a common understanding regarding the distribution of the home equity when they entered into the Agreement. And here, the record does not reflect such a common understanding concerning distribution of the home's equity.
¶15 Relying on Muchesko , Wife alternatively argues the superior court's property distribution can be upheld based on the parties' performance of the contract. See 191 Ariz. at 268, 955 P.2d at 24. In Muchesko , a husband and wife prepared a property-settlement agreement three years before they filed for divorce. Id. at 267, 955 P.2d at 23. Although the wife did not sign the settlement agreement, the parties' conduct was consistent with the terms of the settlement agreement, and this court found a binding agreement existed. Id. at 268-71, 955 P.2d at 24-27.[3] In the present case, for the reasons explained above, Husband and Wife's testimony and argument do not support that they had a binding agreement regarding the payment of some of the house's equity by Husband to Wife.
¶16 We remand to the superior court to consider the equity payment to Wife, as well as any other property owned by Husband or Wife that was not accounted for in the Agreement. The superior court must determine the community or separate nature of the asset, and any other outstanding assets, and make an appropriate distribution pursuant to A.R.S. § 25-318. See A.R.S. § 25-318(A) ("In a proceeding for dissolution of the marriage ... the court shall assign each spouse's sole and separate property to such *1037 spouse ... [and] shall also divide the community ... equitably, though not necessarily in kind...."). On remand, the court may revisit whether the parties had a binding agreement if they did not have a common understanding regarding the nature or disposition of the major assets of the community.
B. If a Valid and Binding Separation Agreement Exists, the Superior Court Must Also Determine Whether the Agreement is Unfair.
¶17 Husband also challenges the court's finding that the Agreement was not unfair. See A.R.S. § 25-317(B). Because the court erred by finding the parties knowingly agreed on the distribution of the home equity to Wife, on remand the court must also reassess whether the Agreement as contemplated by the parties was unfair. We also address other arguments raised by Husband as the issues may occur on remand. See State v. Abdi , 226 Ariz. 361, 366, ¶ 18, 248 P.3d 209, 214 (App. 2011) (court to address issues likely to arise on remand); Dawson v. Withycombe , 216 Ariz. 84, 113, ¶ 98, 163 P.3d 1034, 1063 (App. 2007).
¶18 Husband argues that if the Agreement results in Wife retaining all of her 401(k) and half of the home's equity, then it was not equitable, which he equates to being equal. As an initial matter, we recognize several of our cases have stated in dicta that a separation agreement is binding unless the court finds the agreement is "unfair or inequitable." See, e.g. , Breitbart-Napp v. Napp , 216 Ariz. 74, 79, ¶ 14, 163 P.3d 1024, 1029 (App. 2007) ; Cohen v. Frey , 215 Ariz. 62, 67, ¶ 14, 157 P.3d 482, 487 (App. 2007) ; Sharp v. Sharp , 179 Ariz. 205, 210, 877 P.2d 304, 309 (App. 1994), superseded on other grounds by rule as recognized in Hutki v. Hutki , 244 Ariz. 39, 43, 417 P.3d 804, 808 (App. 2018) ; Keller v. Keller , 137 Ariz. 447, 448, 671 P.2d 425, 426 (App. 1983). However, as recently recognized by this court in Hutki , A.R.S. § 25-317"does not use the term equitable." Hutki , 244 Ariz. at 42, ¶ 16, n.5, 417 P.3d at 807. While often what is fair will also be equitable, it is plausible that a separation agreement could be inequitable or unequal, but not "unfair" under the specific facts of a case. See A.R.S. § 25-317(B) (when reviewing a separation agreement, the superior court should consider "the economic circumstances of the parties and any other relevant evidence produced by the parties"); Toth v. Toth , 190 Ariz. 218, 221, 946 P.2d 900, 903 (1997) (under A.R.S. § 25-318, when awarding community assets "[i]n most cases, ... an equal distribution of joint property will be the most equitable" but in some circumstances "equal is not equitable"); Sharp , 179 Ariz. at 210, 877 P.2d at 309 (court must consider all the evidence before it concerning the agreement, as well as the parties, their relation, ages, finances, opportunities, and contributions to the community estate). Moreover, had the legislature intended the superior court to determine if an agreement was "unfair or inequitable," it could have done so. See A.R.S. § 25-318(A) (requiring the superior court to divide community property "equitably, though not necessarily in kind"); Egan v. Fridlund-Horne, 221 Ariz. 229, 239, ¶ 37, 211 P.3d 1213, 1223 (App. 2009) ("[W]e presume that when the legislature uses different wording within a statutory scheme, it intends to give a different meaning and consequence to that language.").[4] Accordingly, when a separation agreement is presented to the superior court under A.R.S. § 25-317, the court's obligation is to determine whether the agreement is "unfair." A.R.S. § 25-317(B).
¶19 Husband further argues the court erred by considering his military benefit, *1038 which is his sole and separate property, in finding the agreement was not unfair under A.R.S. § 25-317. He posits that there is no authority permitting the superior court to consider one spouse's sole and separate property in determining whether a separation agreement is unfair. We agree with Husband that his military benefit is his sole and separate property because his military service occurred before the parties' marriage. See A.R.S. § 25-213(A). However, we disagree with Husband's contention that the superior court cannot consider the parties' sole and separate property when a separation agreement is presented to the court under A.R.S. § 25-317.
¶20 We hold that when determining whether a separation agreement is unfair under A.R.S. § 25-317, the superior court may consider the parties' sole and separate property if the parties considered their sole and separate property as a basis for making the agreement. See A.R.S. § 25-317(B) (directing the superior court to consider "the economic circumstances of the parties and any other relevant evidence produced by the parties"). Husband is correct that the superior court may only "assign" each spouse his or her own separate property when it is distributing property in a divorce proceeding pursuant to A.R.S. § 25-318(A). However, A.R.S. § 25-317 does not limit parties who enter into a separation agreement to only considering community property. Rather, "[t]o promote amicable settlement of disputes between parties to a marriage attendant on their separation or the dissolution of their marriage," under A.R.S. § 25-317(A), "the parties may enter into a written separation agreement containing provisions for disposition of any property owned by either of them." (Emphasis added.) Accordingly, we hold a separation agreement may be based on one or both party's separate property if the parties intend to do so when arriving upon the settlement agreement, and the resulting agreement is not unfair.
¶21 Husband also argues the superior court erred by considering his military benefit based on A.R.S. § 25-318.01, which provides that when making a property disposition, a court cannot "[c]onsider any federal disability benefits awarded to a veteran for service-connected disabilities" pursuant to certain portions of the United States Code. We agree the superior court may not consider such federal disability benefits when it is distributing community property under A.R.S. § 25-318, but A.R.S. § 25-317 does not prohibit parties from considering such benefits when entering into a separation agreement nor does it limit the court from considering the parties' intentions when determining whether the agreement is unfair.
¶22 However, when entering into a separation agreement, as a "built-in safeguard[ ]," In re Harber's Estate , 104 Ariz. 79, 88, 449 P.2d 7, 16 (1969), parties must act with "full knowledge of the property involved and [their] rights therein," Wick v. Wick , 107 Ariz. 382, 384, 489 P.2d 19, 21 (1971). This necessarily includes knowing whether the property at issue is community or separate. See Sharp , 179 Ariz. at 210-11, 877 P.2d at 309-10 (remanding for the superior court to hold an evidentiary hearing on the fairness of a separation agreement in part because no evidence was presented regarding what property constituted community property and the wife "attested that she was unaware of the nature and extent of the community assets").
¶23 In this case, the superior court expressly considered Husband's sole and separate property when determining whether the Agreement was unfair. Wife testified she and Husband discussed his military benefit and her 401(k) and that Husband thought it was fair for him to keep his military benefit and her to keep her 401(k) because that is Wife's only retirement account. The superior court noted this testimony and found "[i]t is quite likely that [Husband] will receive far more from his pension than [Wife] will receive from her 401k over the respective parties' lives. In fact, from June 3, 2013 to the time of trial, [Husband] has received approximately $143,000.00 solely from his military pension."
¶24 Husband and Wife could have believed it was "fair" for Husband to keep his military benefit in exchange for Wife keeping her 401(k) and could have agreed to such terms, despite Husband's military benefit *1039 being his separate property. However, on appeal Husband asserts he was unaware his military benefit was his sole and separate property until he hired an attorney and petitioned for dissolution, more than three years after he signed the Agreement. Wife testified at trial she understood that Husband's military benefit predated their marriage and was his sole and separate property. But there is nothing in the record showing Husband knew his military benefit was his sole and separate property when he and Wife entered into the Agreement or that he understood Wife did not have a community interest in his benefit. Accordingly, on remand the superior court must determine whether the Agreement was "unfair" considering the lack of agreement regarding the equity issue in the marital home, and whether Husband acted with full knowledge of his separate property rights in his military benefit. See A.R.S. § 25-317(B).[5]
C. The Superior Court Erred by Considering Equitable Defenses Not Raised by the Parties.
¶25 Husband also argues the superior court erred by finding that Wife had equitable defenses of laches, ratification, and detrimental reliance. The court found that Husband relied on the Agreement to relieve him of a tax debt that would have been a community debt but for the existence of the Agreement and waited more than three years to challenge the Agreement. The court further found that Wife relied to her detriment on the Agreement "by expending the majority of the funds she received [from the home equity payment] pursuant to the division of property and debts, as confirmed by the [Agreement], without any formal or legal objection to the [Agreement] for over three years." Without making any further findings, the court found the equitable defenses precluded Husband's claims.
¶26 The superior court erred to the extent it relied on equitable defenses. "Every defense, in law or fact, to a claim for relief in any pleading, shall be asserted in the response if one is required." Ariz. R. Fam. Law P. 32(B). Wife, however, did not assert or argue equitable defenses to Husband's claims before the superior court.[6] Husband testified the parties operated under the Agreement for three-and-a-half years and that in a filing with the Internal Revenue Service he referenced some of the parties' actions around the time the Agreement was signed. But Husband's testimony did not establish that he received a benefit from, or that Wife relied to her detriment on, the IRS filing. Likewise, Wife testified about what she did with some of the home equity money she received, but the fact that she used the money to invest in certain assets does not establish an equitable defense. And, beyond that testimony, no other significant evidence was presented at trial regarding the elements of the equitable defenses found by the court. Therefore, the superior court erred by finding equitable defenses precluded Husband's claims. See Reed v. Hinderland , 135 Ariz. 213, 215, 660 P.2d 464, 466 (1983) ("An affirmative defense must be both pleaded and proven."); see also Diaz v. Bachelier , 2 CA-CV 2014-0136, 2015 WL 4169990, at *2, ¶ 12 (Ariz. App. July 9, 2015) (mem. decision) (citing In re Guardianship of Stanfield , 276 P.3d 989, 1001 (Okla. 2012) ) (superior court erred by sua sponte concluding a claim for relief was barred by laches).
ATTORNEY'S FEES AND COSTS ON APPEAL
¶27 Husband and Wife both request attorney's fees on appeal pursuant to *1040 A.R.S. § 25-324. In the exercise of our discretion, we decline to award either party attorney's fees. As the prevailing party, Husband is entitled to costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.
CONCLUSION
¶28 For the foregoing reasons, we reverse the decree of dissolution relating to the distribution of community property and remand for proceedings consistent with this opinion.

The Arizona Rules of Family Law Procedure were amended on January 1, 2019. For this opinion, we cite to the prior version of the rules because they were in effect at the time the superior court entered the decree.

Wife never raised the gift argument in the superior court. Therefore, we do not reach the issue of whether the home equity payment was a gift. Wife is free to properly raise and prove the issue on remand. See Bobrow v. Bobrow , 241 Ariz. 592, 595, ¶ 10, 391 P.3d 646, 649 (App. 2017) (the burden is on the party claiming an action was a gift to establish the claim by clear and convincing proof).

We note the court in Muchesko based its finding that a binding agreement existed on contract principles, and neither the superior court nor this court analyzed whether the agreement was unfair under A.R.S. § 25-317(B). Muchesko , 191 Ariz. at 268, 955 P.2d at 24.

The Uniform Marriage and Divorce Act, on which A.R.S. § 25-317 was modeled, provides that the terms of a separation agreement are binding upon the court unless the court finds the agreement is "unconscionable." Unif. Marriage & Divorce Act § 306(b) (1973). The uniform act's unconscionability test imposes a more stringent standard on a party seeking to challenge a separation agreement than A.R.S. § 25-317(B) 's "unfair" standard. See In re Marriage of Pownall , 197 Ariz. 577, 580-81, ¶ 10, 5 P.3d 911, 914-15 (App. 2000) (factors indicative of substantive unconscionability of a premarital separation agreement are "contract terms so one-sided as to oppress or unfairly surprise an innocent party," "as well as 'an overall imbalance in the obligations and rights imposed by the bargain' " (quoting Maxwell v. Fid. Fin. Servs., Inc. , 184 Ariz. 82, 89, 907 P.2d 51, 58 (1995) ) ).

We note that on remand, when determining whether the Agreement is unfair, the superior court must look at the time the Agreement was entered. See Nelson v. Rice , 198 Ariz. 563, 568, ¶ 14, 12 P.3d 238, 243 (App. 2000) (citing Maxwell , 184 Ariz. at 88, 907 P.2d at 57 ) ("Unconscionability is determined as of the time the parties entered into the contract."); see also A.R.S. § 25-202(C)(2) (the court looks at the time of execution when determining whether a premarital agreement is unconscionable).

The only reference in Wife's pretrial statement that could arguably be viewed as raising an equitable defense is "WIFE relied on the parties' agreements." This reference is insufficient to raise and address the issue. See Manicom v. CitiMortgage, Inc. , 236 Ariz. 153, 160, ¶ 27, 336 P.3d 1274, 1281 (App. 2014) (reliance is just one element of the defense of estoppel and the party seeking estoppel must establish both actual reliance and that such reliance was reasonable); Contempo Constr. Co. v. Mountain States Tel. & Tel. Co. , 153 Ariz. 279, 283, 736 P.2d 13, 17 (App. 1987) (pleadings insufficient to raise estoppel defense where party did not allege facts supporting every element).