NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

JACQUELINE R. CARROLL,

*Petitioner/Appellant/ Cross-Appellee/Appellee*,

v.

ALEXANDER MICHAEL CARROLL,

*Respondent/Appellee/ Cross-Appellant/Appellant.*

No. 1 CA-CV 15-0351 FC
1 CA-CV 19-0482 FC
(Consolidated)

FILED 6-25-2020

Appeal from the Superior Court in Maricopa County
No. FN2012-092431
The Honorable Bethany G. Hicks, Judge, *Retired*

**VACATED AND REMANDED**

COUNSEL

Tiffany & Bosco, PA, Phoenix
By Amy D. Sells
*Counsel for Petitioner/Appellant/ Cross-Appellee/Appellee*

The Murray Law Offices, PC, Scottsdale
By Stanley D. Murray
*Co-Counsel for Respondent/Appellee/ Cross-Appellant/Appellant*

Deshon Laraye Pullen, PLC, Scottsdale
By DeShon Pullen
*Co-Counsel for Respondent/Appellee/ Cross-Appellant/Appellant*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Jennifer M. Perkins joined.

---

**M O R S E**, Judge:

**¶1**　　　　Jacqueline Carroll ("Wife") appeals and Alexander Carroll ("Husband") cross-appeals from a decree of dissolution ("the decree"). They each assert that the court erred in its allocation of property and in its award of spousal maintenance to Wife. Because the superior court conflated the allocation of property with the award of spousal maintenance, we vacate those portions of the decree, and remand for reconsideration on the existing record. We likewise vacate the superior court's order enforcing repayment to Wife under the decree.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**　　　　Husband and Wife married in Germany in 1994. They returned to the United States in 2002. From 2002 to 2009 neither party held full-time employment. Nevertheless, they funded their lifestyle by borrowing against their increasingly dwindling real estate assets and obtaining loans from Wife's parents. In 2009, Husband went back to work and the couple moved to Arizona. In May 2011, Husband separated from Wife. A year later, Wife petitioned for dissolution of marriage. Wife then filed a motion for temporary orders and, after a hearing, was awarded $5,000 per month in temporary spousal maintenance.

**¶3**　　　　Following trial, the superior court entered a decree of dissolution in which it held the parties jointly responsible for the debt to Wife's parents and all unknown debts, but held Husband solely responsible for all other debts and tax liabilities of the community. In consideration of

2

the significant community debt assigned solely to Husband (roughly $1.5 million), the court reduced Wife's spousal maintenance award to $1,500 per month, indefinitely. The court ordered an even split of the community's retirement accounts and required Husband to make an equalization payment to Wife for his purchase of a luxury car with community funds while separated. The court then allocated a few items as sole and separate property but awarded each party the remaining community property in their possession because it was either comingled or concealed. The court also awarded Wife some of her attorney fees.

¶4            Each party immediately challenged the decree. Husband moved for reconsideration; Wife moved for a new trial. After both efforts were denied, Wife appealed and Husband cross-appealed. Soon after, Wife filed for bankruptcy and this court granted a stay of the appeal pending resolution of the bankruptcy proceeding. During the stay, a dispute arose over enforcement of the decree. Wife paid approximately $59,700 of the joint debt owed to her parents, and pursuant to the terms of the decree, petitioned the superior court to order Husband to pay the same amount. Husband filed a motion to dismiss due to the ongoing bankruptcy proceeding, which was denied. After trial, the superior court ordered that Husband reimburse Wife for $29,606.05—half of her payment of the debt. The court also awarded Wife most of her attorney fees. In June 2019, Husband appealed from the superior court's order of repayment and award of attorney fees.

¶5            Around this time, Wife's bankruptcy proceeding concluded and this court lifted its stay of the original appeal. This court then consolidated the appeals in August 2019. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I. Property Allocation.

¶6            Husband and Wife both contend that the superior court erred when it allocated the community property and debts. The court evenly split the few community assets and jointly allocated the debt held by Wife's parents, but made Husband solely responsible for "all other debts and income tax liabilities of the community." The court justified the unequal allocation because "Husband's payment of Wife's portion of such community debts shall be in lieu of spousal maintenance in those amounts." We review the court's allocation of community property and debt for an abuse of discretion. *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App.

2007). "An abuse of discretion occurs when the court makes an error of law in the process of reaching a discretionary conclusion." *In re Marriage of Williams,* 219 Ariz. 546, 548, ¶ 8 (App. 2008).

¶7 While a court may sometimes order an unequal distribution of property, *see Inboden v. Inboden*, 223 Ariz. 542, 547, ¶ 18 (App. 2010), it cannot be based on reduced spousal maintenance, *Koelsch v. Koelsch,* 148 Ariz. 176, 182 (1986) ("[P]roperty division and spousal maintenance are two separate and distinct considerations at dissolution."). Whereas the "interest of a spouse in his or her share of the community property is immediate, present and vested," an award of spousal maintenance is determined by the separate factors of A.R.S. § 25-319 and "may vary from time to time with the needs of the receiving spouse and the ability of the other to pay." *In re Marriage of Foster,* 125 Ariz. 208, 210-11 (App. 1980). Conflating property division and spousal maintenance creates a non-modifiable award of spousal maintenance and allocates community property without statutory authorization. *Foster,* 125 Ariz. at 211. Just as "increased spousal maintenance cannot justify depriving a spouse of his or her property right," *Koelsch,* 148 Ariz. at 182, decreased spousal maintenance cannot justify an unequal distribution of community debts, *see Elliott v. Elliott,* 165 Ariz. 128, 137 (App. 1990) ("Property settlements, spousal maintenance awards, and child support awards involve distinct considerations.").

¶8 Here, the court decreased Husband's support obligation to justify its unequal distribution of community debt and property that favored Wife. This was error. Although the court found that Wife could not pay her share of the community debt, it should have adjusted the allocation of debts and assets to achieve an equitable result, rather than reducing the award of spousal maintenance. *See Caldwell v. Caldwell,* 126 Ariz. 460, 462 (App. 1980) ("Assets and obligations are reciprocally related and there can be no complete and equitable disposition of property without a corresponding consideration and disposition of obligations."). Accordingly, we vacate the part of the decree allocating debts and property and remand for consideration of that issue consistent with this decision.[1]

¶9 Husband also contends that the court erred in determining that the money owed to Wife's parents was a community debt. We address this issue because it is likely to arise on remand. *See State v. Abdi*, 226 Ariz.

---

[1] Because we vacate the entirety of the property allocation, we need not consider Husband and Wife's numerous other challenges to the allocation of assets, debts, and for procedural safeguards for repayment of those debts.

361, 366, ¶ 18 (App. 2011) (explaining that an appellate court may address issues likely to arise on remand). During the marriage, Wife's parents agreed to use their good credit rating to open numerous credit cards in their own name to fund both Husband's and Wife's expenses. At trial, Wife provided promissory notes as evidence of the creditor-debtor relationship, which stated that Wife's parents agreed to make their lines of credit available in exchange for the parties making the minimum payments until those accounts were paid in full. Husband concedes this arrangement was in place during the marriage and if the promissory notes are valid, the superior court was within its discretion to find the existence of a community debt. However, Husband alleges that Wife's parents never paid any money on the credit cards and thus did not incur any detriment. Therefore, he contends, the promissory notes that the court accepted as proof of the community debt are invalid for lack of consideration.

¶10 A promissory note is a contract, *Hogan v. Wash. Mut. Bank, N.A.*, 230 Ariz. 584, 587, ¶ 10 (2012), and the validity of a contract is a mixed question of law and fact that we review de novo, *Buckholtz v. Buckholtz,* 246 Ariz. 126, 129, ¶ 10 (App. 2019). An enforceable contract requires "an offer, acceptance, consideration, a sufficiently specific statement of the parties' obligations, and mutual assent." *Id.* (quoting *Muchesko v. Muchesko*, 191 Ariz. 265, 268 (App. 1997)). Husband only challenges a lack of consideration for the promissory notes. "In Arizona, money is not always required as consideration; instead, adequate consideration need only consist of a benefit to the promisor and a detriment to the promisee." *Keg Restaurants Ariz., Inc., v. Jones*, 240 Ariz. 64, 76, ¶ 43 (App. 2016). "A promise exchanged for a promise is sufficient; consideration need not be of like or identical value, and the court will not inquire into the adequacy of consideration." *Nickerson v. Green Valley Recreation, Inc.*, 228 Ariz. 309, 321, ¶ 29 (App. 2011). Here, Wife's parents made the promise to make their credit lines available in exchange for the parties' promise to repay. The detriment is that Wife's parents' credit lines were depleted, and they were legally obligated to pay the debt if the parties did not. Therefore, the promissory notes were supported by consideration and valid.

¶11 Beyond that, Husband presented no evidence to support his claim that Wife's parents made no payments on the debt or that Wife's parents' creditors released them from the debt. Therefore, even assuming his legal argument has merit, he failed to meet his burden in disproving both the presumption of consideration and a community obligation. *Dunlop v. Fort Mohave Farms, Inc.,* 89 Ariz. 387, 393 (1961) ("A written contract imports a consideration. The burden of showing a lack or failure of consideration is upon the party attacking it." (citation omitted)); *see also*

*In re Marriage of Flower,* 223 Ariz. 531, 537, ¶ 24 (App. 2010) ("Because debt incurred during marriage is presumed to be community in nature, the spouse contesting this characterization must establish by clear and convincing evidence that the debt is actually a separate obligation."). Accordingly, we affirm the superior court's finding that the money owed to Wife's parents was a community debt to be apportioned in the decree and again on remand.

## II. Spousal Maintenance.

**¶12** The parties agree that Wife was entitled to spousal maintenance under A.R.S. § 25-319(A). However, both parties challenge the amount and duration of the award determined by the superior court under A.R.S. § 25-319(B). This court reviews an award of spousal maintenance for an abuse of discretion. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶ 14 (App. 1998). A family court abuses its discretion by making an error of law in reaching a discretionary conclusion. *Williams*, 219 Ariz. at 548, ¶ 8.

**¶13** Here, the court analyzed the factors in A.R.S. § 25-319(B) and found "that in addition to Husband's payments of Wife's portion of the community debts as and for spousal maintenance," Wife was entitled to an award of $1,500 per month indefinitely. In making its determination the court decreased Wife's award of spousal maintenance in consideration of her unequal share of the community property. For the reasons stated above, *supra* ¶ 7, this was error. Simply put, the amount of spousal maintenance cannot be decreased to account for a community debt that was not properly allocated. *See also Elliott,* 165 Ariz. at 137.

**¶14** Moreover, as one of the factors in A.R.S. § 25-319(B), the court must consider the financial circumstances of the spouse receiving an award as a result of the property allocated to that spouse at dissolution. *See* A.R.S. § 25-319(B)(9) ("The financial resources of the party seeking maintenance, *including marital property apportioned to that spouse*, and that spouse's ability to meet that spouse's own needs independently." (emphasis added)). However, this consideration is meant to occur <u>after</u> the allocation of property has occurred, and not in unison, as the court did here. Therefore, we likewise vacate the award of spousal maintenance. On remand the court is instructed to separately consider, after its allocation of debts and property, the amount and duration of the award of spousal maintenance pursuant to the factors in A.R.S. § 25-319(B).

**III. Enforcement of the Decree.**

¶15        In a separate action, consolidated with this appeal, Husband challenges the superior court's decision ordering him to reimburse Wife for one-half of her payment towards the joint community debt owed to Wife's parents.  In the years after the decree, Wife alleged she paid $59,700 of the debt to her parents, while Husband paid none.  She then brought an action to enforce payment of that debt against Husband, claiming that the decree required Husband to pay the same amount.  In interpreting the decree, the superior court held that Husband is jointly responsible for what was "actually paid" by Wife towards that debt.  The court then found Wife's testimony credible that she paid $59,212.10 towards the debt and ordered Husband to reimburse Wife for one-half that amount—$29,606.05.

¶16        Husband argues this was error because the decree does not support ordering reimbursement.  He contends that the total debt owed to Wife's parents was $325,123.00 and, thus, each party had to pay their share of this debt, or $162,561.50.  Because Wife had not paid the entirety of her share, he argues that the court could not order reimbursement.  We review de novo the trial court's interpretation of a decree of dissolution.  *Cohen v. Frey*, 215 Ariz. 62, 66, ¶ 10 (App. 2007).  The decree does not support Husband's position.  The decree provided that "the parties shall be jointly responsible for debts remaining due to Wife's parents . . . [and] neither party shall be required to repay such debts in any amount in excess of the amount actually paid by the other."  The plain language of the decree provides for equal payment of what is "actually paid" towards the debt, not for equal payment of the entire debt.  Here, the amount actually paid towards the debt was $59,212.10 and there was no evidence that the parent's estate was seeking further repayment of the debt.  Moreover, contrary to Husband's contentions, there is no requirement of a reimbursement agreement between the parties; the decree alone provides authority for the court to order this reimbursement payment.

¶17        Husband also challenges the court's factual finding that Wife actually paid $59,212.10 towards the debt.  He alleges the payment in that amount was impossible while Wife reported earnings of roughly $60,000 per year on her W-2s during that time.  If there is any credible evidence to support the family court's factual findings, this court must accept those findings as true.  *In re Marriage of Berger*, 140 Ariz. 156, 162 (App. 1983).  Here, the court credited Wife's testimony that she earned more income than reported on her W-2s.  In support, Wife testified that she worked numerous side jobs during this time, for which she was paid in cash.  Further, Wife provided evidence of her repayment in the form of receipts signed by her

Mother for loan repayment, copies of checks paid to her Mother, and deposit records for all those payments in the parents' bank accounts. Accordingly, we affirm the superior court's factual finding that Wife paid $59,212.10 towards the community debt owed to her parents.

**¶18**         Because the superior court's decision was based on the allocation of property and debts that we have vacated, we must also vacate the superior court's decision ordering Husband to reimburse Wife pursuant to the terms of that part of the decree.  On remand, the court may consider its prior finding that Mother has paid $59,212.10 towards the community debt and take that finding into account in constructing an equitable allocation of property and debts on remand.

**IV. Attorney Fees**

**¶19**         Husband contends that the superior court abused its discretion by awarding Wife her attorney fees in both the dissolution decree proceeding and the litigation concerning enforcement of the decree.  We review an award of attorney fees for an abuse of discretion.  *Lee v. ING Inv. Mgmt., LLC*, 240 Ariz. 158, 161, ¶ 11 (App. 2016).  Under A.R.S. § 25-324 the superior court can award attorney fees "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings."

**¶20**         Husband concedes he has greater financial resources.  The record also supports the superior court's finding that Husband took unreasonable positions throughout both proceedings.  In the dissolution decree, the Special Master appointed to facilitate discovery found that Husband's "lack of any verification of the truthfulness or completeness of his responses" caused significant delay in the proceeding.  He also noted that Husband continued to evade discovery even after the Special Master intervened.  As a result, the Special Master recommended "civil contempt" and that "fees and costs" should be awarded against him.  Similarly, in the enforcement proceeding, Husband filed a counter-petition alleging that certain community property could not be considered because it was not identified at the time of the dissolution proceeding.  After considerable discovery on the issue, it was revealed that Husband had repeatedly acknowledged the disputed property during the dissolution proceeding. The record therefore supports an award of attorney fees in both instances.

**¶21**         Husband also contends that the superior court erred in the amount of attorney fees awarded to Wife in the enforcement proceeding. He contends that Wife was only supposed to be awarded a "portion" of her

fees but was eventually awarded $9,000 of a possible $10,706.58. Because $9,000 is a portion of $10,706.58 we affirm.

¶22 Both parties have requested attorney fees and costs on appeal. In November 2015, the court stayed this appeal due to the automatic stay in Wife's bankruptcy proceeding. Wife was instructed to inform the court within ten days when either the bankruptcy stay was lifted, or the bankruptcy proceeding was dismissed. In November 2018, the bankruptcy was discharged. Wife filed interim reports in February and June of 2019 stating that the bankruptcy was ongoing and she did not inform the court of the discharge until August 2019. For this, Husband sought sanctions, which were denied without prejudice for this panel to consider sanctions in awarding attorney fees. After review of the record we grant Husband's request for sanctions and award Husband his fees on appeal incurred before August 29, 2019, as a result of the delay in lifting the stay and the request for sanctions, upon compliance with Arizona Rules of Civil Appellate Procedure 21. After consideration of the parties' economic resources and positions pursuant to A.R.S § 25-324, we grant Wife's request and award her fees incurred on appeal after August 29, 2019, in an amount to be determined upon compliance with Arizona Rules of Civil Appellate Procedure 21. Wife also is awarded her taxable costs on appeal upon compliance with Arizona Rules of Civil Appellate Procedure 21.

## CONCLUSION

¶23 For the foregoing reasons, we vacate the allocation of property and the award of spousal maintenance in the decree and remand for consideration consistent with this decision. We likewise vacate the superior court's order requiring reimbursement based on the terms of the decree.



AMY M. WOOD • Clerk of the Court
FILED: AA