IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

GEORGE TERAN, *Appellant.*

No. 1 CA-CR 21-0148
FILED 4-19-2022

---

Appeal from the Superior Court in Yuma County
No. S1400CR201800702
The Honorable David M. Haws, Judge

**VACATED AND REMANDED IN PART;
AFFIRMED IN PART**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Robert J. Trebilcock
*Counsel for Appellant*

---

**OPINION**

Vice Chief Judge David B. Gass delivered the opinion of the court, in which
Presiding Judge Paul J. McMurdie and Judge Angela K. Paton joined.

---

**G A S S**, Vice Chief Judge:

¶1 George Teran appeals his convictions and the resulting concurrent sentences for manslaughter and two counts of driving under the influence (DUI). He does not appeal his conviction for possession of drug paraphernalia. We vacate and remand his manslaughter conviction but affirm his remaining convictions.

## FACTUAL AND PROCEDURAL HISTORY

¶2 This court views the facts in the light most favorable to sustaining the jury's verdicts, resolving all reasonable inferences against Teran. *See State v. Felix*, 237 Ariz. 280, 283, ¶ 2 (App. 2015).

¶3 Teran was driving when he struck and killed a victim as she stepped off the median and started to cross the roadway. The victim and two friends were walking along a red brick pathway that connected a canal-access road and ran perpendicular to the roadway. The two friends stayed in the median because they saw Teran approaching and were surprised the victim stepped into the roadway. Teran was driving between 44 and 55 miles per hour (M.P.H.), and he did not brake or otherwise try to avoid the collision. The posted speed limit was 40 M.P.H.

¶4 Immediately after the collision, Teran pulled over and called 911. He said he hit a pedestrian "crosswalking" when the pedestrian "jumped in front of [him]." When officers later interviewed Teran, he said he saw three or four girls "in the crosswalk . . . in the median . . . doing the right thing" and he heard "stop, don't go" when the victim "jumped in front of [his] car."

¶5 The interviewing officer noted Teran slurred his speech and his eyes were "droopy." Teran admitted to smoking marijuana two nights before the accident and to having half an ounce of marijuana "wax" in his backpack in his car. Officers drew a sample of Teran's blood under a search warrant. Subsequent testing revealed Teran's blood sample contained a blood concentration level of approximately 36 nanograms of Xanax per milliliter and 14 nanograms of tetrahydrocannabinol (THC) per milliliter.

¶6 Xanax is a brand name for the drug alprazolam, a prescription sedative. THC is the primary psychoactive component of cannabis. *State ex rel. Montgomery v. Harris*, 234 Ariz. 343, 343, ¶ 1 n.1 (2014). Teran's blood sample also contained Carboxy-THC, a non-impairing metabolite of THC. The superior court correctly instructed the jurors the presence of Carboxy-

THC does not show impairment. *See id.* at 347–48, ¶ 25 (affirming dismissal of DUI charge because Carboxy-THC does not cause impairment).

¶7          A search of Teran's car uncovered a partial Xanax pill in the center console and a backpack containing two glass jars of a green leafy substance together with the marijuana wax Teran described.

¶8          The State charged Teran with second-degree murder, two counts of misdemeanor DUI (drugs), transportation of narcotic drugs for sale, transportation of marijuana for sale, possession of a dangerous drug, and possession of drug paraphernalia.

¶9          The first trial ended in a mistrial based on a disclosure issue. Before Teran's retrial, the superior court severed the counts for transportation of narcotic drugs for sale and transportation of marijuana for sale from the other charged offenses.

¶10          The jury found Teran not guilty of second-degree murder but guilty of manslaughter as a lesser-included offense. As a result of the manslaughter conviction, the jury did not consider the lesser-included offense of negligent homicide. As for the remaining counts, the jury found Teran guilty of both DUI charges and the possession of drug paraphernalia charge, but not guilty of the possession of a dangerous drug charge. The superior court imposed concurrent prison sentences, the longest being 10.5 years for the manslaughter conviction, with appropriate presentence incarceration credit. Teran timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 13-4031 and 13-4033.A.1.

## ANALYSIS

### I.    Jury Instructions

¶11          Teran challenges the superior court's failure to instruct the jury on three issues: (1) a crosswalk instruction; (2) "right-of-way" instructions; and (3) a proposed lesser-included offense.

¶12          This court reviews the refusal to give a jury instruction for abuse of discretion. *State v. Hurley*, 197 Ariz. 400, 402, ¶ 9 (App. 2000). An abuse of discretion occurs when the superior court's refusal to instruct the jury on a particular point of law is "clearly untenable, legally incorrect, or amount[s] to a denial of justice." *State v. Chapple*, 135 Ariz. 281, 297 n.18 (1983), *superseded by statute on other grounds*. A defendant is generally entitled to a jury instruction on any theory reasonably supported by the

evidence. *State v. Johnson*, 205 Ariz. 413, 417, ¶ 10 (App. 2003). "A set of instructions need not be faultless; however, they must not mislead the jury in any way and must give the jury an understanding of the issues." *State v. Noriega*, 187 Ariz. 282, 284 (App. 1996).

### A.      The "Crosswalk" Instruction

**¶13**      Teran first contends the superior court should have *sua sponte* instructed the jury the victim was not in a crosswalk when the accident occurred. The correct definition of a crosswalk is a question of law. But whether the area in question was a crosswalk was a disputed factual issue about which witnesses offered conflicting testimony. Teran's requested instruction would violate our constitution by having the superior court comment impermissibly on the evidence. *See* Ariz. Const. art. 6, § 27 ("Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."); *see also State v. Rodriguez*, 192 Ariz. 58, 64, ¶ 29 (1998) (superior court cannot "express an opinion as to what the evidence proves" or "interfere with the jury's independent evaluation of that evidence"). The superior court did not err.

### B.      The "Right-of-Way" Instructions

#### i.      Abuse of Discretion

**¶14**      Teran next argues the superior court erred by denying his request to instruct the jury under A.R.S. §§ 28-792 and -793, which are traffic code statutes describing the respective duties and rights of pedestrians and drivers when pedestrians cross roadways within crosswalks or at unmarked locations.

**¶15**      For drivers, Arizona's "right-of-way" law says,

> [I]f traffic control signals are not in place or are not in operation, the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be in order to yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is on the half of the roadway on which the vehicle is traveling or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger. A pedestrian shall not suddenly leave any curb or other place of safety and walk or run into the path of a vehicle that is so close that it is impossible for the driver to yield.

A.R.S. § 28-792.A. For pedestrians, Arizona law says, "A pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles on the roadway." A.R.S. § 28-793.A.

**¶16**        "A party is entitled to an instruction on any theory reasonably supported by the evidence[, but the superior] court generally is not required to give a proposed instruction when its substance is adequately covered by other instructions." *Rodriguez*, 192 Ariz. at 61, ¶16 (internal citations omitted). The critical inquiry is whether the given instructions, considered as a whole, "adequately set forth the law applicable to the case." *Id.*

**¶17**        Here, the superior court instructed the jury as to the definition of a crosswalk. Though the instructions the superior court gave allowed the jury to decide whether the collision area was a crosswalk, they left the jury to speculate—without guidance in the instructions—about what a reasonable driver would do depending on whether the pedestrian was or was not in a crosswalk. No other instructions adequately covered the respective duties of drivers when pedestrians are within or outside crosswalks.

**¶18**        To be sure, a victim's fault is not generally at issue in criminal prosecutions. *But cf.* A.R.S. § 13-404 (the self-defense justification requires the jury to consider whether the victim used or attempted to use "unlawful physical force"). Nevertheless, our Supreme Court has assigned error when the superior court refused an instruction on a victim's undisputed duty to yield. *State v. Shumway*, 137 Ariz. 585, 588–89 (1983) (error to refuse instruction on victim's duty to yield, because evidence supported the theory that defendant had the right of way in an intersection collision). Though juries generally do not determine a victim's culpability, they "may still consider the decedent's conduct when determining whether a defendant's act was criminally negligent," reckless, or reasonable. *See id.* at 588. Here, what Teran could reasonably expect from pedestrians was prescribed by statute but withheld from the jury.

**¶19**        The right-of-way instructions, therefore, went directly to Teran's mental state and whether the jury could convict Teran of second-degree murder or the lesser-included charges of manslaughter and negligent homicide. *See* A.R.S. §§ 13-1104.A.3 (person commits second-degree murder by "recklessly engag[ing] in conduct that creates a grave risk of death and thereby causes the death of another person"), -1103.A.1 (person commits manslaughter by recklessly causing the death of another),

1102.A (person commits negligent homicide if the person causes the death of another with criminal negligence), -105(10)(c) (defining recklessness as consciously disregarding a risk when such disregard is a "gross deviation from the standard of conduct that a reasonable person would observe in the situation"), -105(10)(d) (defining criminal negligence as failing to perceive a substantial and unjustifiable risk when such failure is a "gross deviation from the standard of conduct that a reasonable person would observe in the situation").

¶20 The record reasonably supports Teran's proposed right-of-way instructions. Teran elicited testimony from one detective explaining the red brick pathway connected a canal-access road and did not have white paint markings, stop lights, or signage. The detective also stated the area was not a marked crosswalk. Though Teran stated he believed the area was a crosswalk in his police interview, the jury was not bound by that statement in determining Teran's duty. *See State v. Pike*, 113 Ariz. 511, 514 (1976) (the jury resolves evidentiary conflicts and weighs witness credibility). When the superior court refuses an instruction, this court must "view the evidence on appeal in the light most favorable to the proponent of the instruction." *State v. Alemeida*, 238 Ariz. 77, 78, ¶ 2 (App. 2015); *see also State v. King*, 225 Ariz. 87, 90, ¶ 13 (2010). Viewed from that lens, Teran presented sufficient evidence "upon which the jury could rationally sustain his defense." *See State v. Strayhand*, 184 Ariz. 571, 577–78 (App. 1995).

¶21 Because Teran presented sufficient evidence to support the right-of-way instructions and those instructions went directly to the charged offenses, the superior court abused its discretion in refusing to provide them.

### ii. The Standard of Review

¶22 Because Teran establishes error, our standard of review turns on whether Teran sufficiently raised the jury-instruction issue before the superior court.

¶23 The State argues fundamental-error review applies because Teran failed to object to the denial of his requested jury instructions. *See State v. Bearup*, 221 Ariz. 163, 168, ¶ 22 (2009). To obtain relief on fundamental-error review, Teran bears the burden and must establish the error (1) went to the foundation of the case, (2) took away a right essential to his defense, or (3) was so egregious he could not possibly have received a fair trial. *See State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). The State relies on Arizona Rule of Criminal Procedure 21.3 to buttress its

fundamental-error review argument." *See* Ariz. R. Crim. P. 21.3(b) ("If a party does not make a proper objection, appellate review *may* be limited." (emphasis added)). But that rule is discretionary and does not resolve the issue when, as here, the superior court discusses the proposed instructions—including any objections—with the parties off the record.

**¶24**     Teran argues harmless-error analysis applies. *See Rodriguez*, 192 Ariz. at 63, ¶ 27 (applying harmless-error review to the refusal of a requested jury instruction); *State v. Nottingham*, 231 Ariz. 21, 28, ¶ 17 (App. 2012) (abrogated by *State v. Bigger*, 251 Ariz. 402 (2021)); *State v. Lewis*, 236 Ariz. 336, 346, ¶ 44 (App. 2014). For harmless-error review, "[t]he inquiry . . . is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *State v. Bible*, 175 Ariz. 549, 588 (1993) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) (emphasis in original)). The State bears the burden and must show "beyond a reasonable doubt that the error had no influence on the jury's judgment." *Id.*; *see also Chapman v. California*, 386 U.S. 18, 24 (1967) (An error is harmless if it appears "beyond a reasonable doubt that the error . . . did not contribute to the verdict obtained.").

**¶25**     The principle underlying the fundamental-harmless dichotomy is whether a defendant adequately and timely raised an issue before the superior court. *See Bible*, 175 Ariz. at 588 ("When an issue is raised but erroneously ruled on by the [superior] court, this court reviews for harmless error."). "The purpose of an objection is to permit the [superior] court to rectify possible error, and to enable the opposition to obviate the objection if possible." *State v. Rutledge*, 205 Ariz. 7, 13, ¶ 30 (2003) (quoting *State v. Hoffman*, 78 Ariz. 319, 325 (1955)). As a result, a defendant may preserve an issue for appeal without saying the word "objection." *See State v. Peraza*, 239 Ariz. 140, 146, ¶ 18 (App. 2016); *cf. State v. Burton*, 144 Ariz. 248, 250 (1985) (When "a motion in limine is made and ruled upon, the objection raised in that motion is preserved for appeal, despite the absence of a specific objection at trial.").

**¶26**     On the facts before us, Teran timely and adequately raised an "objection." *See Peraza*, 239 Ariz. at 146, ¶ 18. Here, over the course of two trials, both parties asked for these instructions. In the first trial, the State independently filed a written request for instructions on §§ 28-792 and -793, a request the State never withdrew before the court declared a mistrial. During the retrial, Teran filed a written request asking the superior court to include §§ 28-792 and -793 instructions. The record does not suggest the State opposed their inclusion. Though Teran did not explain his objection

on the record, he requested the right-of-way instructions in writing, the State was given an opportunity to respond, and the superior court held discussion on Teran's request in chambers. *See Peraza*, 239 Ariz. at 146, ¶ 18.

**¶27**      When the superior court went back on the record, it invited comments on the in-chambers discussion. At that point, defense counsel said, "I simply had filed with the court a request for . . . some additional instructions on crosswalks. I've already made a statement in chambers, Your Honor. . . . I know the [c]ourt said no. I simply want to note that I made that request." The superior court also acknowledged Teran had asked it to provide the right-of-way instructions.

**¶28**      Though we lack the contents of the in-chambers discussion including Teran's statement, we decline to fault Teran for it. This court has "previously disapproved the practice of holding unrecorded bench conferences on trial motions." *See State v. Palenkas*, 188 Ariz. 201, 206 n.4 (App. 1996) (refusing to fault defense counsel for the lack of a record because the superior court's actions prevented a contemporaneous record); *see also State v. Masters*, 108 Ariz. 189, 192 (1972) (remanding a robbery case for a new trial when no transcript of the trial was available "through no fault of the defendant"). We again caution the superior court against holding off-the-record discussions on critical, trial-related issues, such as settling jury instructions.

**¶29**      Based on the above, we apply harmless-error review.

### iii.    Reversible Error

**¶30**      Though the State did not explicitly argue the error was harmless in its briefing, we decline to apply waiver. *See State v. Ortiz*, 238 Ariz. 329, 344, ¶ 71 (App. 2015) (addressing the principles underlying harmless-error review can overcome waiver). The State discussed harmless error during oral argument and implicitly addressed harmlessness by arguing the trial evidence and arguments of counsel obviate the need for the right-of-way instructions. *See id.* Moreover, Teran had the opportunity in his briefing and at oral argument before this court to address harmless error. *See id.* at 345, ¶ 71. We, therefore, exercise our discretion and address the issue because doing so does not affect our conclusion. *See State v. Smith*, 203 Ariz. 75, 79, ¶ 12 (2002) (doctrine of waiver is discretionary); *State v. Lopez*, 217 Ariz. 433, 438, ¶ 17 n.4 (App. 2008) (same); *see also State v. Ketchner*, 236 Ariz. 262, 265–66, ¶ 20 (2014) (conducting harmless-error review despite State's failure to argue error was harmless in brief). *But see State v. Carver*, 160 Ariz. 167, 175 (1989) ("Failure to argue a claim usually

constitutes abandonment and waiver of that claim."); *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005) (the State bears the burden to show an error was harmless).

**¶31** In holding the State to its harmless-error burden, this court looks to the evidence at trial, arguments of counsel, and the instructions as a whole in considering whether an instruction, or the lack of an instruction, constituted harmless error. *State v. Solis*, 236 Ariz. 285, 288, ¶ 14 (App. 2014).

**¶32** As the State points out, a detective testified about the duties of pedestrians with respect to crosswalks. And during closing, Teran's counsel argued the pedestrian unreasonably jumped in front of Teran's car. The instructions directed the jury to decide whether the collision area was a crosswalk. But the defense could not point the jury to specific laws governing a driver's duties with respect to pedestrians within or outside of crosswalks—questions central to whether Teran acted recklessly, negligently, or as a reasonable person. *See supra* at ¶ 18. Any arguments the defense made in closing about Teran's duties as a reasonable person were mere arguments lacking the force of law.

**¶33** We cannot say, beyond a reasonable doubt, the absence of these right-of-way instructions did not affect the verdict. The jury convicted Teran of "[r]ecklessly causing the death of another." *See* A.R.S. § 13-1103.A.1. The applicable duties of a driver, and what a driver may legally expect of a pedestrian, implicate whether a jury considers a driver's actions reckless, negligent, or reasonable. The superior court's refusal to provide the right-of-way instructions constituted reversible, not harmless, error.

**¶34** To the extent the parties believe it necessary, they may request additional instructions in the event of a new trial to ensure the inclusion of these right-of-way instructions does not confuse the jury about the appropriate legal duty governing Teran's actions.

### C. Lesser-Included Offense

**¶35** Teran argues the superior court erred by refusing his request to instruct the jury under A.R.S. § 28-672 as a lesser-included offense of the second-degree murder charge.

**¶36** Section 28-672.A.7 is not a lesser-included offense of second-degree murder. A lesser-included offense is an offense "composed solely of some but not all of the elements of the greater crime so that it is impossible to have committed the crime charged without having committed the lesser one." *State v. Celaya*, 135 Ariz. 248, 251 (1983).

¶37        Section 28-672.A.7 provides: "A person is guilty of causing serious physical injury or death by a moving violation if the person violates [Section 28-792] . . . and the violation results in an accident[,] causing serious physical injury[,] or death to another person."

¶38        The superior court properly refused the requested instruction because § 28-672.A is only implicated if a motorist commits an enumerated "moving violation" resulting in another's death. The applicable homicide statutes do not contain a similar statutory-violation element. *See* A.R.S. §§ 13-1103 (manslaughter), -1104 (second-degree murder), -1102.A (negligent homicide). Teran, therefore, could commit homicide under each of those statutes without violating § 28-672.A because the latter contains an element not required for homicide. The superior court did not err by refusing Teran's request for an instruction on § 28-672.A as a lesser-included offense.

## II.    State's Expert Witnesses

¶39        Teran raises two issues challenging the admission of testimony from two of the State's experts. This court reviews decisions on the admissibility of expert testimony for abuse of discretion. *State v. Boyston*, 231 Ariz. 539, 544, ¶ 14 (2013). If the court abused its discretion, this court then reviews for harmless or fundamental error, depending on whether Teran adequately raised the issue before the superior court. *See Henderson*, 210 Ariz. at 567, ¶¶ 18–19.

¶40        Teran first contends the superior court committed fundamental error by allowing the accident reconstructionist to testify at the second trial about Teran's estimated speed. According to Teran, the testimony violated his double jeopardy rights. We disagree.

¶41        Teran begins by acknowledging two general rules of criminal law: (1) "the slate is wiped clean" for a retrial after a defense-requested mistrial is granted, and (2) double jeopardy bars a retrial when a prosecutor's misconduct causes a mistrial. *See Pool v. Super. Ct.*, 139 Ariz. 98, 108–09 (1984). But as Teran concedes, the mistrial in the first trial was not based on prosecutorial misconduct. Instead, the witness unexpectedly opined about Teran's estimated speed in violation of the superior court's preclusion order. Further, though the State untimely disclosed the expert's opinion for the first trial, Teran does not assert the disclosure's timing prejudiced him at the retrial. Accordingly, no double jeopardy violation occurred, the untimeliness of the disclosure did not prejudice Teran at the retrial, and the superior court did not err.

¶42 Finally, Teran argues the superior court erred by denying his motion in limine in which he sought to preclude the State's drug toxicologist from testifying about Teran's blood-test results and "any opinion as to [Teran's] sobriety." In his motion, Teran also requested a pretrial evidentiary hearing to challenge the reliability of the toxicologist's opinions. *See State v. Thompson*, ___ Ariz. ___, ___, ¶ 63, 502 P.3d 437, 454 (2022) (discussing the factors for determining the admissibility of a qualified expert's opinion under Ariz. R. Evid. 702)); *see also State v. Connor*, 249 Ariz. 121, 126, ¶ 26 (App. 2020) (same). We address this issue both because it is relevant to Teran's DUI convictions and because it may occur on remand. *See Buckholtz v. Buckholtz*, 246 Ariz. 126, 131, ¶ 17 (App. 2019).

¶43 The superior court denied the motion without conducting an evidentiary hearing. Instead, the superior court noted it would not "allow or consider any witness opinion as to impairment" absent foundation. The superior court then admonished defense counsel to object if defense counsel did not think the prosecutor "laid the foundation." Teran did not object at trial.

¶44 First, the superior court did not abuse its discretion when it did not conduct a pretrial evidentiary hearing. *See Connor*, 249 Ariz. at 127, ¶ 31 ("Although [the superior] court has the discretion to hold a pre-trial evidentiary hearing to address admissibility under [Rule] 702, such a hearing is not mandatory." (cleaned up)). The superior court reserved any determination regarding the expert's reliability until trial by requiring proper foundation for that testimony. Delaying the determination until trial was within the superior court's discretion and did not constitute error.

¶45 Second, the superior court did not abuse its discretion in denying Teran's motion in limine. Teran failed to present evidence clearly establishing the toxicologist was not qualified to testify about impairment in his motion and at oral argument. Such evidence can be admissible if proffered by a qualified expert and based on the facts particular to the case at issue. Here, the superior court correctly ruled "the presence of the metabolite and the drugs in the systems are relevant." The superior court also noted "[i]f this expert can't say the quantity leads to impairment, she can't give an opinion as to impairment." This ruling establishes the superior court maintained its gatekeeper role and did not abuse its discretion in denying Teran's motion contingent on the State laying proper foundation.

¶46 Finally, it was error to admit at trial evidence of the quantity of THC and Xanax in Teran's blood and the expert's testimony that she "expect[ed] that there [were] some signs or symptoms from the levels that

are being seen." This expert was a toxicologist, not a drug-recognition expert—though she attended drug-recognition school once as an observer. She was unqualified as an expert on impairment and should not have been permitted to testify on that topic. *See Thompson*, ___ Ariz. at ___, ¶ 63, 502 P.3d at 454 ("Extensive training is not required but [the party proposing expert testimony must show] a degree of expertise in the subject such that 'a jury can receive help on a particular subject from the witness.'" (quoting *State v. Davolt*, 207 Ariz. 191, 210, ¶ 70 (2004))). Further, because the expert was not qualified to testify about impairment, her testimony describing the quantities of THC and Xanax in Teran's blood was inadmissible because it was irrelevant absent proper foundation to contextualize it with respect to impairment.

¶47 Teran, however, did not object to that testimony at trial. Because the superior court essentially denied Teran's motion without prejudice by making its ruling contingent upon proper foundation, Teran's failure to object at trial waived review on appeal unless he can establish fundamental, prejudicial error. *See State v. Garcia-Quintana*, 234 Ariz. 267, 269, ¶ 6 (App. 2014) (applying fundamental-error review "[b]ecause the court never ruled on Defendant's motion in limine and Defendant did not object at trial" (citing *State v. Perez*, 233 Ariz. 38, 43–44, ¶ 21 (App. 2013))).

¶48 Teran does not establish prejudice. *See Escalante*, 245 Ariz. at 144, ¶ 31 (proving prejudice "requires a showing that without the error, a reasonable jury could have plausibly and intelligently returned a different verdict"). The officer who interviewed Teran testified about Teran's slurred words and droopy eyes following the incident. The lab results showing Teran had THC and Xanax in his blood—without the quantities—were admissible. And even Teran concedes "the jury was capable [of] using its own knowledge and experience to determine whether [Teran's] 'signs or symptoms' were attributable to common ordinary factors or were the result of the Xanax that was in his system." Teran, therefore, does not show the toxicologist's testimony prejudiced him.

## CONCLUSION

¶49 We vacate and remand Teran's manslaughter conviction and sentence but affirm his remaining convictions.

